## Case No. 3,856.

### DEXTER v. ARNOLD.

#### [5 Mason, 303.][1]

Circuit Court, D. Rhode Island. June Term, 1829.

BILL OF REVIEW —WHEN LIES — NEWLY-DISCOVERED EVIDENCE — NEW TITLE — PARTIES —ENROLLED DECREES—PRACTICE.

1. In what cases a bill of review generally lies. It lies for matter of error apparent on the face of the record.

[Cited in Irwin v. Meyrose, 7 Fed. 536.]

2. What is such matter? The error must appear on the decree and pleadings, for the evidence in the case at large cannot be examined to ascertain, whether the court misstated or misunderstood the fact.

3. A bill of review also lies for newly discovered evidence material to the issue, if such evidence was not known until after the period in which it could be used in the cause.

[Cited in Ocean Ins. Co. v. Fields, Case No. 10,406; Jenkins v. Eldredge, Id. 7,267; Doggett v. Emerson, Id. 3,961; Bentley v. Phelps, Id. 1,332; Irwin v. Meyrose, 7 Fed. 536. Cited in brief in Watson v. Stevens, 3 C. C. A. 411, 53 Fed. 32.]

4. Quaere, if such newly discovered evidence must not be some written paper or evidence.

[Cited in Wood v. Mann, Case No. 17,953.]

5. Quaere, if newly discovered testimony of witnesses, going to confirm or to contradict the original testimony, is admissible.

6. No bill of review will lie, if the newly discovered evidence could have been obtained by reasonable diligence before the original hearing.

[Cited in Massie v. Graham, Case No. 9,263; Jenkins v. Eldredge, Id. 7,267. Cited in

_____
[1] [Reported by William P. Mason, Esq.]

brief in Watson v. Stevens, 3 C. C. A. 411, 53 Fed. 32.]

7. Quaere, whether a bill of review lies upon new matter not in issue in the original cause; but which shows the decree erroneous.

[Cited in Baker v. Whiting, Case No. 786; Jenkins v. Eldredge, Id. 7,267.]

8. It does not lie, where the party seeks to set out a new title, and not to support the title in the original cause.

9. A bill of review lies for the party who obtained the original decree in his own favour, if the original decree was injurious to him.

10. A bill of review lies for error in law only where the original decree is enrolled. If not enrolled, the remedy is a re-hearing.

[Cited in Massie v. Graham, Case No. 9,263.]

11. All decrees in the courts of the United States are deemed to be enrolled at the term in which they were passed.

[Cited in U. S. v. The Glamorgan, Case No. 15,214; Robinson v. Rudkins, 28 Fed. 9.]

12. If the decree be not enrolled, a bill in the nature of a bill of review, and not strictly a bill of review for newly discovered evidence, lies.

13. The granting of a bill of review for newly discovered evidence is matter of discretion, and must be brought forward by petition to the court.

[Cited in Daniel v. Mitchell, Case No. 3,563; Massie v. Graham, Id. 9,263; Steines v. Franklin Co., 14 Wall. (81 U. S.) 22; Reeves v. Keystone Bridge Co., Case No. 11,661; Watson v. Stevens, 3 C. C. A. 411, 53 Fed. 32.]

14. Such a petition must describe the new evidence distinctly and specifically, and when discovered, and its bearing on the decree.

It is not sufficient to state, that the petitioner expects to prove certain facts. He must state the exact evidence, to establish them.

15. On the hearing of such a petition affidavits may be admitted on each side, if necessary to explain the nature of the evidence.

16. Upon a bill of review for newly discovered evidence, the other party may controvert by plea or answer that it is newly discovered.

17. Petition of review, for matters of fact, denied upon all the circumstances of the case.

Petition to file a bill for the purpose of obtaining a review of a decree, rendered in this court at a former term, in the case of Dexter v. Arnold [Case No. 3,855]. The original bill, filed at the November term, 1821, charged Thomas Arnold, as surviving partner, joint owner, trustee, and agent of his brother Jonathan Arnold, and as administrator upon his estate. Upon the bill, answer, and exhibits, an interlocutory decree passed, for the defendant [Anna Arnold, administratrix of Thomas Arnold] to account upon oath, with directions to the master as to the mode of taking an account, and allowing the plaintiff to surcharge and falsify the stated accounts exhibited by the defendant. A report was made by the master at the June term, 1823, and a final decree entered for the plaintiff at the following November term, for five hundred dollars sixty-six and a half cents. The grounds, presented by the petition for a review of that decree, were, the discovery of new facts showing, that several sums of money had come into the hands of the defendant, belonging to Jonathan Arnold, which were not entered in Thomas Arnold's accounts, nor allowed by the master, and that several claims, made by Thomas Arnold and allowed by the master, were without foundation and erroneous. The counsel for the plaintiff made a particular statement of the several sums of money, which the plaintiff claimed should be added to the amount of the former decree in his favor, and of the new evidence to be produced to support his claim, and also of the several sums which should be deducted from the allowances made to the defendant, and of the new evidence to support these deductions, and made a call upon the defendant for the production of letters, accounts, &c.

Greene, Dist. Atty., contended, for defendant, that this was not a case in which a bill of review could be sustained; that the original decree being in favor of the petitioner, and the ground, upon which a review of that decree was sought, being, that a less sum was decreed to the petitioner than he thought himself entitled to, the court would at once dismiss the petition, in accordance with the rule laid down by elementary writers of high authority; that a bill of review would only lie in favor of the party against whom a decree was rendered. And he cited 2 Madd. Ch. Pr. 539; 1 Har. Ch. Pr. 176; Ch. Cas. 51; 2 Freem. 182, 183. Further, that if this position, which presented a positive bar to the granting of a bill of review in this case, could not be maintained, still, as the petitioner's claim was not one of strict right, but it was within the province of the court, as a court of equity, to reject it, whatever might be its merits, if they thought that course, upon an examination of the circumstances, the most equitable for all the parties interested, the court would refuse the petition without going into an examination of the character of the new facts set forth in it. The original bill was brought by the petitioner at such time as best suited his own convenience, and when he must be presumed to have been prepared to prove the allegations contained in it. The original respondent answered under oath all interrogatories put to him by the petitioner, and disclosed all matters relating to his accounts, about which any inquiry was made. His accounts were all carefully examined and audited by the master, under special instructions from the court, the petitioner or his counsel attending, and being heard on any item excepted to. A report was made to the court in favor of the petitioner, and a decree rendered thereon, as far back as the year 1823, to which no objection was made, or could be made, at the time of it. The original respondent has since then deceased; and now, after the expiration of four years from the rendering of that decree, the petitioner seeks to review it for the purpose of increasing the amount awarded to him, and to that end

·cites in the administratrix of the original respondent, who must be presumed to be, and in fact is, entirely unacquainted with all the matters in controversy, and incapable of making such explanations and producing ·such evidence, as the original respondent ·could readily have done were he still living. The counsel for the respondent contended, that, under circumstances like these, let the merits of the petitioner's case be what they might, the court would take into consideration the great hardship, which the present respondent would suffer, if a review were allowed, and, exercising that discretion, which was wisely committed to them, they would reject the petition without examining the details of it. But he further contended, that, if the court should think proper to go into an investigation of the merits of the petitioner's case, there were certain well established principles of equity applicable to petitions for bills of review, to the spirit of which the petitioner's case must conform, or he could not succeed.

1. A bill of review may be filed upon newly ·discovered evidence, but the newly discovered evidence must be conclusive and relevant, such as a receipt, a release, &c. and not the mere accumulation of witnesses to a litigated fact. And he cited 3 Johns. Ch. 127; 3 P. Wms. 371; 2 Madd. Ch. 536; Hardr. ·342, 451.

2. That the affidavit of the petitioner must state the nature of the new evidence, in ·order that the court may judge of its relevancy and materiality; and must also state, that the new matter could not have been produced or used before the decree. ·Coop. 92.

3. That a bill of review, upon matter of fact, must be upon special leave of the court, and upon oath of the discovery of "new matter or evidence, which has come to light after the decree, and could not possibly be had or used at the time when the decree passed." 3 Johns. Ch. 126; 16 Ves. 348; Coop. 91; 1 Har. Ch. Pr. 176; 2 Madd. Ch. Pr. 520, 538; 1 Ball & B. 142.

4. That a bill of review may be for error in law apparent on the face of the decree, as when an absolute decree is made against an infant, and cases of this kind; but not for an erroneous judgment. The error must be a palpable one. 2 Madd. Ch. Pr. 538; 17 Ves. 177; 2 Johns. Ch. 491.

5. That exceptions to a master's report cannot be assigned for error upon a bill of review. 1 Har. Ch. Pr. 175.

The counsel for the respondent then went into a minute examination of the particulars of the petition with reference to these principles, and contended that it could not be sustained.

Tillinghast, for plaintiff, contended, that the preliminary objection, presented by the ·defendant's counsel in the nature of a bar to the petition, would not be considered by the court as entitled to much consideration;

that one or two ancient cases only were cited in support of it; and that, even if the circumstances of those cases were such as to sanction the principle to the extent, to which it was advanced by the defendant's counsel, still it was so inconsistent with those principles, which, in these times of improved equity, regulated investigations into the relative right of contending parties, that the court would not adopt it upon the authority of those cases alone.

As to the second ground taken by the defendant's counsel, he contended, that this was not one of those cases, where the hardship was so entirely on the side of the defendant, that the court would exercise the high discretion vested in it, of rejecting the petition without an examination into its merits; that this was a course, which would never be pursued by the court, excepting in extreme cases, and where the granting of a review would operate a great injury to the respondent, even if the issue of the case should be in his favor; that it was to be recollected, that the original defendant, Thomas Arnold, executed very important trusts in relation to the estate of his brother Jonathan; that it was his duty to execute these trusts with all fidelity and uprightness, and to make a just and true account of his doings when called upon; that all the documents, relating to the property in question, were in his possession, and all the facts, which it was important to the present petitioner to have made known on the former trial, were within his knowledge, and it was his duty then to have stated every thing important to a just knowledge and fair decision of the case; that if, for his own purposes, and to the injury of the petitioner, he then kept back facts which, if disclosed, would have produced a decree more favorable to the petitioner and more consonant with equity and justice, than the one actually rendered, his representatives ought not to deem it a hardship upon them, that whenever these facts should come to the knowledge of the original plaintiff, he should seek a revision of the original decree.

The counsel for the petitioner then went into an elaborate and minute examination of the particulars of the case.

Before STORY, Circuit Justice, and PITMAN, District Judge.

STORY, Circuit Justice. The present is a somewhat novel proceeding in this circuit; and I am not aware, that, in any other circuit of the United States, any general course of practice has prevailed, which would supercede the necessity of acting upon this, as a case of first impression, to be decided upon the general principles of courts of equity. It comes before the court upon a petition for leave to file a bill of review of a decree rendered in this court at November term, 1823, principally upon the ground of a discovery of new matters of fact. The petition was filed at November term, 1827, and affidavits have been read in support of it.

Counter affidavits have also been admitted on the other side, not for the purpose of investigating or absolutely deciding upon the truth of the statements in the petition; but to present, in a more exact shape, some of the circumstances growing out of the original proceedings, which may assist the court in the preliminary discussion, whether leave ought to be granted to file the bill of review. This course, though not very common, is, as I conceive, perfectly within the range of the authority of the court (see Livingston v. Hubbs, 3 Johns. Ch. 124; 1 Norris v. Le Neve, 3 Atk. 25); and may be indispensable for a just exercise of its functions, in granting or withholding the review. If, indeed, it were doubtful, in case the bill of review should be allowed, whether the defendants could by plea or answer traverse the allegation in such bill, that the matter of fact is new, I should not hesitate to inquire, in the most ample manner, into the truth of such allegation, before the bill was granted, in order to prevent gross injustice. But as every such bill of review must contain an allegation, that the matter of fact is new, it seems to me clear upon principle, that, as it is vital to the relief, it is traversable by plea or answer, and must be proved, if not admitted at the hearing. In Hanbury v. Stevens (1784) cited by Lord Redesdale,—Redesd. Pl. Eq. 80 (3d Ed. 70),—the court is reported to have held that doctrine. The case of Lewellen v. Mackworth, 2 Atk. 40, Barnard, Ch. 445, though very imperfectly, and, as I should think, inaccurately reported, seems to me to support the same conclusion. It has been relied on by the best text writers for that purpose. Redesd. Pl. Eq. (3d Ed.) 231; Coop. Eq. Pl. 305; 1 Mont. Eq. Pl. 335, note; Id. 336; 2 Mont. Eq. Pl. 227, note 100. Lord Redesdale, in his original work on Equity Pleadings (Redesd. Eq. Pl., 2d Ed. 80), stated the point, as one which may be doubted; but upon principle I cannot see, how that can well be. And in the last edition (the third), revised by his Lordship, I find that he has questioned the propriety of such a doubt. Redesd. Pl. Eq. (3d Ed.) 70.

Before I proceed to consider the particular grounds of the present petition, it may be well to glance at some of the regulations, which govern courts of equity in relation to bills of review, that we may be better enabled to judge of their application to the courts of the United States. The ordinance of Lord Bacon constitutes the foundation of the system, and has never been departed from. It is as follows. "No decree shall be reversed, altered, or explained, being once under the great seal, but upon a bill of review. And no bill of review shall be admitted, except it contain either error in law, appearing in the body of the decree, without farther examination of matters of fact, or some new matter, which hath arisen after the decree, and not any new proof, which might

have been used, when the decree was made. Nevertheless, upon new proof that is come to light after the decree made, and could not possibly have been used at the time when the decree passed, a bill of review may be grounded by the special license of the court, and not otherwise." Beame, Orders Ch. 1. A bill of review, therefore, lies only, when the decree has been enrolled under the great seal in chancery. If it has not been so enrolled, then for error of law apparent upon the decree the remedy is by a petition for a rehearing. Perry v. Phelips, 17 Ves. 173, 178. But if the ground of the bill is new matter, discovered since the decree, then the remedy is by a supplemental bill in the nature of a bill of review, and a petition for a rehearing, which are allowed by special license of the court. Redesd. Eq. Pl. 65 (78), 81; Coop. Eq. Pl. 88, 89, 90, 91; Beame, Orders Ch. 2, 3, notes; Sheffield v. Duchess of Buckingham, 1 West, 682; Mont. Pl. Eq. p. 330. c. 12; Norris v. Le Neve, 3 Atk. 26; Perry v. Phelips, 17 Ves. 173; Blake v. Foster, 2 Ball & B. 457, 460. This distinction between a bill of review and a bill in the nature of a bill of review, though important in England. is not felt in the practice of the courts of the United States, and perhaps rarely in any of the state courts of equity in the Union. I take it to be clear, that in the courts of the United States all decrees as well as judgments are matters of record, and are deemed to be enrolled as of the term, in which they are passed. So that the appropriate remedy is by a bill of review.

In regard to errors of law, apparent upon the face of the decree, the established doctrine is, that you cannot look into the evidence in the case in order to show the decree to be erroneous in its statement of the facts. That is the proper office of the court upon an appeal. But taking the facts to be, as they are stated to be on the face of the decree, you must show, that the court have erred in point of law. Mellish v. Williams, 1 Vern. 166; Cranborne v. Delahay, 1 Freem. 169; Combs v. Proud, 1 Ch. Cas. 54, 1 Freem. 181; 3 Rep. Ch. 18; Hardr. 174; Perry v. Phelips, 17 Ves. 173; O'Brien v. Connor, 2 Ball & B. 146, 154. If, therefore, the decree do not contain a statement of the material facts, on which the decree proceeds, it is plain, that there can be no relief by a bill of review, but only by an appeal to some superior tribunal. It is on this account, that in England decrees are usually drawn up with a special statement of, or reference to, the material grounds of fact for the decree. Combs v. Proud, 1 Ch. Cas. 54; Brend v. Brend, 1 Vern. 214, 2 Ch. Cas. 161; Bonham v. Newcomb, 1 Vern. 216; O'Brien v. Connor, 2 Ball & B. 146, 154. In the courts of the United States the decrees are usually general. In England the decree embodies the substance of the bill, pleadings, and answers; in the courts of the United States the decree usually contains a mere reference to the an-

tecedent proceedings without embodying them. But for the purpose of examining all errors of law, the bill, answers, and other proceedings are, in our practice, as much a part of the record before the court, as the decree itself; for it is only by a comparison with the former, that the correctness of the latter can be ascertained.

In regard to new matter, there are several considerations deserving attention. In the first place the new matter must be relevant and material, and such as, if known, might probably have produced a different determination. Bennet v. Lee, 2 Atk. 529; O'Brien v. Connor, 2 Ball & B. 155; Earl of Portsmouth v. Lord Effingham, 1 Ves. Sr. 429. In other words, it must be new matter to prove what was before in issue, and not to prove a title not before in issue (Coop. Eq. Pl. 91; Patterson v. Slaughter, Amb. 292; Young v. Keighly, 16 Ves. 348; Blake v. Foster, 2 Ball & B. 451, 462); not to make a new case, but to establish the old one. In the next place the new matter must have come to the knowledge of the party since the period, in which it could have been used in the cause at the original hearing. Lord Bacon's ordinance says in one part it must be, "after the decree:" but that seems corrected by the subsequent words, "and could not possibly have been used at the time when the decree passed," which point to the period of publication. Lord Hardwicke is reported to have said, that the words of Lord Bacon are dark; but that the construction has been, that the new matter must have come to the knowledge of the party after publication passed. Patterson v. Slaughter, Amb. 293. The same doctrine was held in Norris v. Le Neve, 3 Atk. 25, 34, and has been constantly adhered to since. A qualification of the rule quite as important and instructive is, that the matter must not only be new, but that it must be such as that the party, by the use of reasonable diligence, could not have known; for if there be any laches or negligence in this respect, that destroys the title to the relief. That doctrine was expounded and adhered to by Lord Eldon in Young v. Keighly, 16 Ves. 348, and was acted upon by Lord Manners in Barrington v. O'Brien, 2 Ball & B. 140, and Blake v. Foster, Id. 457, 461. It was fully recognized by Mr. Chancellor Kent, and received the sanction of his high authority in Wiser v. Blackly, 2 Johns. Ch. 488, and Barrow v. Rhinelander, 3 Johns. Ch. 120. And in the very recent case of Bingham v. Dawson, 1 Jac. 243, Lord Eldon infused into it additional vigor.

Upon another point there is not perhaps a uniformity of opinion in the authorities. I allude to the distinction taken in an anonymous case in 2 Freem. 31, where the chancellor said, that "where a matter of fact was particularly in issue before the former hearing, though you have new proof of that matter, upon that you shall never have a bill of review. But where a new fact is alleged, that was not at the former hearing, there it may be a ground for a bill of review." Now, assuming that under certain circumstances new matter, not evidence, that is, not in issue, in the original cause, but clearly demonstrating error in the decree, may support a bill of review, if it is the only mode of obtaining relief (see Norris v. Le Neve, 3 Atk. 33, 35; Roberts v. Kingsly, 1 Ves. Sr. 238; Earl of Portsmouth v. Lord Effingham, Id. 420; Redesd. Eq. Pl., Last Ed., 67; 1 Mont. Pl. Eq. 332, 333; Wilson v. Webb, 2 Cox, 3; Standish v. Radley, 2 Atk. 177. See, also, Lord Redesdale's observations in his third edition of his Equity Pleadings, p. 67); still it must be admitted, that the general rule is, that the new matter must be such as is relevant to the original case in issue. Lord Hardwicke, in Norris v. Le Neve, 3 Atk. 33, 35, is reported to have admitted, that a bill of review might be founded upon new matter not at all in issue in the former cause, which seems contrary to his opinion in Patterson v. Slaughter, Amb. 293 (see, also, Young v. Keighly, 16 Ves. 348, 354; Blake v. Foster, 2 Ball & B. 457, 462); or upon matter, which was in issue, but discovered since the hearing. But the very point in 2 Freem. 31 (if I rightly understand it), is that a newly discovered fact is ground for a bill; but not newly discovered evidence in proof of any fact already in issue. This seems to me at variance with Lord Bacon's ordinance, for it is there said, that there may be a review upon "new matter, which hath arisen in time after the decree," and also "upon new proof, that has come to light after the decree made, and could not possibly have been used at the time when the decree passed." It is also contrary to what Lord Hardwicke held in the cases cited from 3 Atk. 33, and Amb. 293. Lord Eldon, in Young v. Keighly, 16 Ves. 348, 350, said: "The ground (of a bill of review) is error apparent on the face of the decree, or new evidence of a fact materially pressing upon the decree, and discovered at least after publication in the cause. If the fact had been known before publication, though some contradiction appears in the cases, there is no authority, that new evidence would not be sufficient ground." That, was also the opinion of Lord Manners in Blake v. Foster, 2 Ball & B. 457. Mr. Chancellor Kent, in Livingston v. Hubbs, 3 Johns. Ch. 124, adopted the like conclusion; and he seemed to think, that such new evidence must not be a mere accumulation of witnesses to the same fact; but some stringent written evidence or newly discovered papers. Gilbert, in his Forum Romanum, p. 186, c. 10, leans to the same limitation, for he says, that in bills of review, "they can examine to nothing, that was in the original cause, unless it be matter happening subsequent, which was not before in issue, or upon matter of record or writing not known before, for if the court should give them leave to enter into proofs upon the same points that were in issue, that

would be under the same mischief as the examination of witnesses after publication, and an inlet into manifest perjury." See, also, Bart. Suit in Eq. 216; Tovey v. Young, Finch, Prec. 193; Taylor v. Sharp, 3 P. Wm. 371; Standish v. Radley. 2 Atk. 177; Chambers v. Greenhill, 2 Ch. R. 66; Thomas v. Harvie's Heirs, 10 Wheat. [23 U. S.] 146. There is much good sense in such a distinction, operating upon the discretion of the court in refusing a bill of review, and I should be glad to know, that it has always been adhered to. It is certain, that cumulative written evidence has been admitted; and even written evidence to contradict the testimony of a witness. That was the case of Attorney General v. Turner, Amb. 587. Willan v. Willan, 16 Ves. 72, 88, supposes, that new testimony of witnesses may be admissible. If it be admissible, (upon which I am not called to decide,) it ought to be received with extreme caution, and only when it is of such a nature as ought to be decisive proof. There is so much of just reasoning in the opinion of the court of appeals of Kentucky on this subject, that I should hesitate long before I should act against it. See Trespass v. McClanahan, Hardin. 350; Head v. Head, 3 A. K. Marsh, 121; Randolph's Ex'r v. Randolph's Ex'rs, 1 Hen. & M. 180.

In the next place it is most material to state, that the granting of such a bill of review is not a matter of right, but of sound discretion in the court. Sheffield v. Duchess of Buckingham, 1 West, 682; Norris v. Le Neve, 3 Atk. 33; Gould v. Tancred, 2 Atk. 533. It may be refused, therefore, although the facts if admitted would change the decree, where the court, looking to all the circumstances, deems it productive of mischief to innocent parties, or for any other cause unadvisable. Bennet v. Lee, 2 Atk. 528; Wilson v. Webb, 2 Cox, 3, and Young v. Keighly, 16 Ves. 348, are strong exemplifications of the principle. These are the principal considerations, which appear to me useful to be brought into view upon the present occasion. Let us now advert to the grounds upon which the petition is framed, and see how far any are applicable to them. The original bill was brought against Thomas Arnold (whose administrator is now before the court) for an account and settlement of his brother Jonathan Arnold's estate, upon which he had administered. The case is reported in Dexter v. Arnold [Case No. 3,855], and I refer to that for a summary of the proceedings and final decree.

In preferring the present petition, the proper course of proceeding has been entirely mistaken. The present counsel for the petitioner is not responsible for those proceedings, they having taken place before he came into the cause. A petition for leave to file a bill of review for newly discovered matter should contain in itself an abstract of the former proceedings, the bill, answers, decree, &c. and should then specifically state what the newly discovered matter is, and

when it first came to the party's knowledge, and how it bears on the decree, that the court may see its relevancy and the propriety of allowing it. Coop. Eq. Pl. 92. The present petition, in its original form, contained nothing of this sort, but referred to an accompanying bill of review, as the one, which it asked leave to file, and then simply affirmed the facts stated in it to be true. This was sufficiently irregular. But upon looking into this bill of review the grounds of error are stated in a very loose manner, and in so general a form as to be quite inadmissible.

The first error assigned is in matter of law, and it is, that Thomas Arnold, the administrator, ought to have been charged with interest upon all sums of money, which he had received as administrator, because the said sums were used by him. The master in his report had declined to allow interest; and upon an exception taken the court confirmed his report on this point. I see no reason for changing the decree on this point, for the reasons stated in the cause of Dexter v. Arnold [Case No. 3,855], and there is no pretence to say, that there is any such proof of the use of the money in the report of the master, as justifies a different conclusion. There is no error in this respect apparent on the face of the master's report, or the decree. The allowance or disallowance of interest rests very much upon circumstances, and slight errors in this respect are not always held fatal. See Gould v. Tancred, 2 Atk. 533. There is no error apparent, therefore, on which a review ought to be granted.

The next ground assigned is, that Thomas Arnold did receive large sums of money and other property, which he has not accounted for before the master, and for which he ought to account; and that since the decree, the petitioner hath discovered new and further evidence in relation thereto, which would have materially changed the report of the master and the decree. The petition does not state what the new evidence is, nor when discovered, and it is quite too vague for any order of the court. The bill then proceeds, very irregularly, to require, that the administrator of Thomas Arnold should answer certain interrogatories as to the cargoes of the ship Friendship. It then states, that Thomas Arnold received six shares in the Tennessee Land Company; and that he received 8,000 dollars on a policy of insurance on the brig Friendship; and that he received large consignments of property from Vincent Gray in Cuba in bills of exchange, &c. belonging to Jonathan's estate; and finally, that he received divers other large sums of money as agent of Jonathan. Now, it must be manifest, that upon allegations so general and indistinct no bill of review would lie. Here is no assertion of newly discovered evidence to maintain one. Such a bill, so framed, ought never to be allowed by a court acting upon the correct principles

of chancery jurisdiction. Afterwards, an amendment of this bill of review was filed, containing more distinct specifications of new matter, most of which, however, as I shall have occasion to notice hereafter, are open to the same objections as those already stated. But the radical objection to both bills is, that they are improperly introduced into the cause at all. A bill of review can only be filed after it is allowed by the court, and upon the very grounds allowed by the court. The preliminary application by petition to file it should state the new matters shortly, distinctly, and exactly, so that the court may see how it presses on the original cause; and it is not permissible to load it with charges and allegations, as in an original seeking bill in equity. In the sense of a court of chancery there is not before this court any sufficient petition, upon which it can act. But as the proceeding is a novelty in this circuit, much indulgence ought to be allowed to the original counsel in the cause (for the present counsel is not at all chargeable) for irregularities of this nature, upon the first presentation of the practice. I advert to the posture of the cause, therefore, not so much with an intention to subject it to close criticism, as for the purpose of declaring, that, even if I could gather from the papers, that there is matter, upon which a bill of review would lie, it is not before the court in such a shape, that the court could judicially pass an order of allowance.

The case has, however, been argued, and with great ability, upon its merits; and waiving for the present any farther reference to the form of the proceedings, I will proceed to the consideration of the points made at the bar. The first point is one made by the defendant, and being preliminary in its nature, must be disposed of before the plaintiff can be farther heard. It is said to be a rule in equity, that where a party has less decreed to him than he thinks himself entitled to, he cannot bring a bill of review; for that lies only in favor of a party against whom there is a decree. For this the opinion of elementary writers (2 Madd. Ch. Pr. 412; 1 Har. Ch. Pr. 86), and the case of Glover v. Portington, Freem. 183, 2 Eq. Cas. Abr. 174, is cited. The case, as here reported, certainly supports the doctrine. But it appears to me, that, if the doctrine is correct, it is so only in cases, where there is no error apparent on the face of the decree, and no newly discovered matter to support a bill of review, for then the proper remedy is by appeal. If there be no such remedy by appeal, but only by bill of review, it would be strange, if a material error could not be redressed upon such a bill by the party to whom it had been injurious; that if a man had 10,000 dollars due him, and had a decree for 100 dollars he was conclusively bound by an error of the court. The decision, reported in Freem. 182, was made by the master of the rolls, who allowed the demur-

rer; but from the report of the same case in 1 Ch. Cas. 51, it appears that it was afterwards reheard before the lord chancellor and Baron Rainsford; and the demurrer was overruled. See same case cited Com. Dig. "Chancery," G, to the same effect. So that the final decision was against the doctrine for which it is now cited. And Lord Nottingham, a few years afterwards, in Vandebende v. Levingston, 3 Swanst. 625, resolved, that the plaintiff may have a bill of review to review a decree made for himself, if it be less beneficial to him than in truth it ought to have been. We may then dismiss this objection.

We may now advance to the examination of the points made by the petitioner in support of his petition for a review, assuming that the amended bill of review is to be received, pro hoc vice, as such a petition. I have already stated, that it is utterly defective in the essential ingredients of such a petition, in not stating with exactness the nature of the new evidence, and when it was first discovered. It is not sufficient to say, that the petitioner expects to prove error in this or that respect: or that he has discovered evidence, which he hopes will establish this or that fact. But he must state the exact nature and form of the evidence itself, and when discovered. If written evidence, it must be stated, and its direct bearing shown. If of witnesses, what facts the witnesses will prove; and when the party first knew the nature of their testimony. It is impossible otherwise for the court to judge, whether the evidence is decisive, or is merely presumptive or cumulative; whether it goes vitally to the case, and disproves it, or only lets in some new matter, confirmatory or explanatory of the transactions in the former decree. The party must go farther, and establish, that he could not, by reasonable diligence before the decree, have procured the evidence. Now, in every one of these particulars, the amended bill, quasi a petition, is extremely deficient. I have looked it over carefully, and cannot find, that it points out a single written paper, which disproves the original case, or names a single witness, whose testimony, if admitted, would overturn it. It deals altogether in general allegations, that certain things are expected to be proved; and, like an original bill, proceeds to ask a discovery from the defendant of letters and papers in her possession as administrator, relative thereto. There are indeed, in the accompanying affidavits, some papers produced and relied on; but they cannot supply the defects of the original petition.

1. The first charge is in effect, that Thomas Arnold, as administrator of Jonathan Arnold, received certain property from Vincent Gray in Cuba, belonging to Jonathan's estate, which he has never inventoried or accounted for. The specifications under this head are: (1) The receipt of 40 boxes of sugar, upon which charges were paid out of Jonathan's estate, amounting to $190: (2) The remit-

tance of a bill to Thomas Arnold, drawn by Andrew Davis on William Davis, Philadelphia, for $1222: (3) The receipt by Captain Mathewson of $500. All these transactions took place in the year 1808, Jonathan having died in June, 1807. Now, the original bill charged a partnership between Jonathan and Thomas. and asked for an account and settlement of the partnership concerns, as well as of the administration. After the answer it was referred to a master to take the accounts, and he made a report accordingly, after hearing the parties many times. In the hearing before the master, the accounts with Vincent Gray were in controversy between the parties, and Thomas Arnold was interrogated as to the whole subject, and made his disclosures. So that the existence of an account with Gray, and the dispute, as to the receipts from him on account of Jonathan's estate, was matter of examination before the master. There is no pretence, that the residence of Gray was not well known; or that the plaintiff could not at that time, by reasonable diligence, have obtained his testimony. if he had desired it. He does not show, that he made any effort to obtain it; and if he had, the very papers now produced would have been obtained. What then is the posture of the case? The plaintiff goes on to a decree without seeking for evidence, though within his reach, and contents himself with such explanations as the defendant then gave; and now, after the lapse of several years, the defendant being dead. asks this court to grant him a bill of review for errors in the account, which ordinary diligence would have rectified at that very time. If such a course should be allowed, it would furnish a perfect immunity for the grossest negligence. According to my understanding of the principles, upon which bills of review are granted, this court, under such circumstances, is not at liberty to grant it. In Bingham v. Dawson, 1 Jac. 243, Lord Eldon refused to allow a bill of review under far less cogent circumstances, deeming it a most mischievous practice; and Mr. Chancellor Kent acted most deliberately to the same effect in Livingston v. Hubbs, 3 Johns. Ch. 124.

But as to the matter of fact; Mr. Gray's letters show, that the 40 boxes of sugar belonged to Thomas Arnold, and not to Jonathan Arnold, thus establishing the incorrectness of this part of the petitioner's case, and leaving only the $190 in his favour. Then, as to the bill on Davis; Thomas Arnold, on his examination before the master, expressly stated, that it had never been paid, Davis being insolvent. And there is not a tittle of new evidence, now offered, to show that he did receive it. It is therefore a mere effort to rehear the original cause on this point. Then, as to the 500 dollars received by Mathewson. In the report 270 dollars is credited to Jonathan's estate on this account; and the only question is, whether the remaining 230

dollars ought to have been credited. Mr. Gray, in his letters. (which. by the by, are mere statements now made, and not originals written at the time of the transactions, and are not sworn to by him,) does not pretend to any absolute certainty, as to the parties to whom the money belonged. He says in that of the 14th of April, 1826, that he had received of De La Motte $1,984, part of which he remitted to Thomas Arnold by the bill drawn on Davis. He did not then recollect how, or when, the balance was remitted. In his letter of the 14th of April. 1827, he states, that on examining his old accounts, &c. he finds, that he passed to the credit of the ship Tyre, Mathewson, master, for account of Thomas Arnold, in July 1808, $230, and in September of the same year, $270, in all 500 dollars; and he presumes, that this was the balance then collected. In his letter of the 27th of February, 1828, he adds, that the money, collected of De La Motte, belonged to Jonathan Arnold, and that the bill on Davis, the $500, the $190, and his commissions. made up the whole sum. Such is the explanation given by Mr. Gray, at the distance of 20 years after the original transactions; and it is too much to say, that his recollections, after such a length of time. ought to overturn the solemn proceedings before the master. It is, at best, testimony only of a presumptive character, cumulative in its nature. to a litigated fact, and, if admissible at all, as a ground for a review, is open to the suggestion of possible mistake. But it does so happen. that there is before the court a letter of Mr. Gray to Thomas Arnold. written on the 12th of April. 1808, (and which, there is much reason to believe, was, among other papers from him, laid before the master upon the hearing,) which may fairly lead to the belief, that Gray is now mistaken in supposing, that the money belonged exclusively to Jonathan Arnold. That letter begins by saying, "I have liquidated your accounts with Don Pablo De Motta, and taken the acceptance on the widow P. & H. for the balance due. &c. for 2,088 dollars 8½." It then goes on to state, that Mr. Barker, of Charleston, has requested him to pay into his hands the money received from De La Motte, which he declined. It then adds, "On examination of the accounts. if any thing should appear to be due to Mr. Barker over and above the 1.000 dollars heretofore received, I will remit it to him, or pay it into the hands of Mr. Bower. However, as you know better than I do, what sum ought to be paid to Mr. Barker. I wish you to settle the amount with him." If any thing is clear, from this language, it is, that Mr. Barker had, or was supposed to have, an interest in this very fund, and that Thomas Arnold was called upon to discharge it. And the first words in the letter, "your accounts," seem to indicate, that Thomas Arnold also might have a personal interest in the fund. If Mr. Barker had an interest, what proof is there, that it

did not amount to the 230 dollars, now sought to be credited in Jonathan's account? After this, what safe reliance can be placed upon Mr. Gray's recollection as to the $190 being paid out of the funds of Jonathan Arnold in his hands? It is certain, that, at that very time, he was collecting money for Thomas Arnold. The letter of instructions to Mathewson, in 1808, shows, that money was to be collected on the personal account of Thomas Arnold, as well as on account of Jonathan Arnold's estate. And Mr. Gray is certainly mistaken in supposing it was credited to the brig Tyre; for it was credited to the brig Perseverance. I do not mean to cast the slightest imputation upon this gentleman's credit. I do not doubt, that he relates the transactions, as he now supposes them to have been. But with the most perfect respect for his veracity, it is not too much to say, that, after such a length of time, no court would be safe to grant a bill of review upon such proofs, at once inconclusive and unsatisfactory. It is to be remembered, that the case stands here very differently from what it would on an original bill. Here, the onus probandi is on the petitioner to establish the error, and it must be proved by newly discovered evidence or facts, to entitle him to a review. Great reliance has been placed, at the argument, upon Moore v. Moore, 2 Ves. Sr. 596, as a case of relief founded upon analogous principles. Without doubt, if a substantial error is conclusively ascertained by newly discovered evidence, that furnishes a ground for a review. But that case was not like the present. There John Moore was made a party to a bill for an account, as one of the executors of C. M.; and the plaintiffs insisted, that he acted as executor. That was not proved; and therefore he was not decreed to account as executor, and he refused to account. Afterwards it was discovered, that he had received £2.500 mortgage money of the testator's estate. Lord Hardwicke thought this was proper matter of review; and that Moore ought to have disclosed the fact on his original answer, although he had not acted generally as executor. Now, there was nothing in this case to put the plaintiffs upon any inquiry as to any mortgage. They asked for an account generally of the testator's estate from his executors, in order to have a decree for their legacies. It would have been different, if the very mortgage had been in controversy between the parties, and brought out upon the account.

2. The next charge is, that in the account settled on the 31st of March, 1801, between Thomas Arnold and Jonathan Arnold, there was debited an item for one half of the premium on the schooner Fame, on her voyage home, of 180 dollars and 12 dollars interest, in all 192 dollars; which it is now said is erroneous, because no such insurance was made or premium paid, the vessel and her cargo being then insured out and home, by the Providence Insurance Company, for more than the value of both. One of the charges, in the original bill, was of errors in the settlement of this very account; and upon the hearing, the court decreed, that the account should stand, subject to any surcharge and falsification by the plaintiff. Of course, this item was open for contestation before the master. It was confirmed, as to this item, by the master; and if the court now reviews it, it undertakes, after a lapse of 28 years and the death of both parties, to open a settled account upon a mere presumption of mistake, founded upon a very imperfect knowledge of the real circumstances. Thomas Arnold was liable to examination before the master for every item in his account. He might have been inquired of, as to the facts, where the insurance was made, and when the premium was paid; and as to all other material circumstances. The petitioner waived such inquiry in the very case, in which he was keenly on the scent to discover errors. It does not appear that he made any inquiry, or was misled by any attempted misrepresentation or concealment on this head. If he then used no reasonable diligence in the matter, then before him, it must be a strong case to justify an interposition of the court now in his favour.

But what is the newly discovered evidence to falsify the item? It now appears, that by a policy underwritten on the 24th of July, 1800, by the Providence Insurance Company; Thomas Arnold for Jonathan Arnold, Barker & Lord, and James Schmeibar, caused insurance to be made of 9,000 dollars on the schooner Fame and cargo, viz. 7,000 dollars on the cargo, and 2,000 dollars on the vessel, from Charleston to Martinico, at and from thence to any one port in the United States, at a premium of 17 per cent.; with liberty to proceed from Martinico to any other port or ports in the West Indies, by adding three per cent. for every English windward port, and five per cent. for every other port. Upon the back of the office copy of the policy is the following indorsement. "October 26. Received information of her safe arrival at Charleston; touched at Trinidad and St. Thomas; for which add 8 per cent. to the premium. Return 9 per cent. on $—— deficiency of cargo from St. Thomas." This indorsement was doubtless made by the proper officer of the insurance company; but what settlement was actually made does not appear by any competent evidence. It appears, however, from William Holroyd's papers, that Barker & Lord were charged in settlement by Thomas Arnold with one half of the premium of the cargo of the Fame, $986.48; and the other half of the premium on the same cargo, viz. $986.48, was charged to Jonathan Arnold, in the above account, settled in March, 1801. It is impossible, I think, from such facts alone, to ascertain, whether the charge of the 192 dollars for premium on the vessel home was correct or not; non constat, that there might not have

been another policy on which it was paid. The very terms of the charge suppose it to be a premium, not for the whole voyage, but for the return voyage only. Besides, it does not appear from this policy, or the other papers, that Barker & Lord had any interest in the vessel. The charge against them is for premium on cargo only; and if they had had any interest in the vessel, and the sum charged included both, it would probably have been mentioned. The very circumstance, that there is a distinct charge of the premium on the vessel, following that of the cargo, which is stated to be settled with William Holroyd, in the account of March, 1801, is strong presumptive proof, that Jonathan Arnold was the sole owner of the vessel. And this is quite compatible with the terms of the policy of insurance. And, after all, the conjecture of the counsel may be well founded, that the settlement under the policy. whatever it was, was by compromise. Who can say, after such a length of time, when the transactions are involved in so much obscurity, that he now understands them better than the parties did at the time, when they were fresh in their minds, and were settled in their accounts? There would be, as I think, much rashness in such an assertion. But, supposing there might be some doubt, is that a ground for unravelling an intricate, settled account, after such a lapse of time? Was there ever a bill of review maintained under such circumstances, especially, when a prior decree had given the party leave to surcharge and falsify? In short, can it be endured, that a bill of review should be allowed, but upon proofs, which standing alone, would overturn the decree, and would be conclusive on the point? Ought they not to be direct, plain, unequivocal?

The next item is a supposed error in the account settled in March, 1801, where Jonathan Arnold is charged with the payment of $2,267.82, principal and interest on his note to Joseph Rogers. It is now said, that by newly discovered evidence the petitioner can show, that only $1,693.95 was in fact paid on that account; and for the payment of this, Thomas Arnold had, in 1798, bills, the property of Jonathan, to the value of £800 sterling, which he had used and enjoyed the interest of. Many of the remarks already made apply with increased force to this item. In the first place, there is a settled acknowledgment between the parties, that the sum is right, and the note was paid. In the next place, as to the bills of exchange. They are duly credited and admitted in the same account, as correctly applied. How then can we say, that they were used differently from what the parties intended? There is no new evidence, as to these bills; and they were included in the report of the master. But what is the new evidence now suggested as to the item of $2,267.82? It is simply this. Mr. William Holroyd was agent of some

sort for Rogers, (we do not know how far,) and in his books (for he is dead) there are now found two credits to Joseph Rogers, one, under date of October 5, 1799, of $600, "received from Thomas Arnold in part of Jonathan Arnold's note;" the other under date of November 9, of the same year, of "amount of Thomas Arnold's note, $1.100, deduct discount, $6.05, viz. $1.093.95," making together the amount of $1,693.95. No other credits appear on Holroyd's books. Rogers is also dead, and in his books no other credits can be found in his accounts with Holroyd; and what is curious enough, the credit of $600 is stated to be "cash in part of T. Arnold's note," and not of Jonathan's. And in Rogers's cash account even the whole of these sums is not credited. What then is the plain amount of this evidence? not, that Thomas Arnold never paid the sum of $2,267.82 on Jonathan's note; but that the payments cannot be distinctly traced, at this distance of time, in either Holroyd's or Rogers's books. And suppose they cannot. Is a settled account to be opened, because third persons, to whom payments have been made, omit to keep correct books, or enter full credits? Is their omission to prejudice the rights of others; and to overturn the deliberate settlements of parties? Are we to indulge in presumptions, that the parties did not know their own concerns, and that there has been fraud or mistake, because we cannot now trace back the origin of payments acknowledged by them? What proof have we, that the sums stated in these books were payments on account of the very note charged in the settlement? The payment of $1,093.95 purports to be on Thomas's note; how can we say, that it was on Jonathan's? The court is, then, called upon to re-examine this account upon mere surmises and conjectures; and the petitioner now demands, that the original note of Jonathan should be proved to verify the payment, exactly as if this were an original bill for an account, and a discovery. The original bill sought to set aside the settled accounts; leave was given to surcharge and falsify; and after a decree confirming the account, a discovery is sought upon new evidence of the loosest texture, and most inconclusive nature. The evidence, such as it is, was open to the plaintiff at the original hearing, if he had chosen to look for it, and by reasonable diligence it might then have been obtained, as well as now. If it had been obtained, I think it would have come to nothing. But as a foundation of a bill of review it is wholly inadmissible. I observe too, that the master states, that this very item was in controversy before him; and that Holroyd's books were examined for the purpose of explaining one or more payments to Rogers by Thomas Arnold on Jonathan's account.

The next item is, that there was an insurance at Malaga, of $8,000, on the brig Friendship's cargo, from that port to the Mediter-

ranean and home; that she was captured in 1797 on the voyage home; and that one half of this cargo belonged to Jonathan, and therefore half of the insurance ought to be credited to him. Now, this very item was not only in controversy before the master, as he states, but it was made the subject of a special interrogatory in the original bill, and a discovery prayed. Thomas Arnold, in his answer, expressly stated, that he had no knowledge of any insurance at Malaga; but had been informed, that there had been a policy there procured by Captain Proud (the master), on the cargo from Malaga to Genoa only; and as that risk terminated without loss, and the vessel was captured afterwards on her voyage home, he never received any thing on that insurance. Here, then, the petitioner was bound to use reasonable diligence, if he did not choose to rely upon the statement in the defendant's answer, and subsequent examination before the master. But he never sent to Malaga; and never made any search for Captain Proud or his papers. Captain Proud is now dead. There is not now the slightest proof, that any money ever was received from the insurance in Malaga. The petitioner now calls upon the other party for a discovery, exactly as he did in the original bill; not because any new fact has come to his knowledge since the decree; but because he has now discovered an old letter, unsigned and unfinished, in the handwriting of Captain Proud, (which does not appear ever to have been sent to the owners,) in which a suggestion is found about insurance made, or to be made by him, on cocoa (part of the cargo), up the Straits, and advising the owners to procure insurance on the vessel from Malaga home. The letter is exceedingly obscure in its terms, and it is utterly impossible to ascertain, what were the precise terms or nature of the insurance; though I should conjecture from its language, that it was limited to the cargo from Malaga to Genoa. If so, it stands completely in harmony with the original answer, and supports it. But if it were otherwise; what ground is here laid for a review? The paper, if newly discovered, is not evidence; and it establishes no receipt of any money by Thomas Arnold on the insurance, which is the material fact. A bill of review is not a bill for a discovery; but a bill founded upon a discovery already made of evidence material and decisive to the issue.

The next charge is, that in the master's report an allowance is made for a note of Jonathan Arnold to Minturn & Champlin, indorsed by Thomas Arnold, and by him paid to Joseph Jenkins, viz. $824.12½; whereas Minturn & Champlin had received 32 bags of pimento belonging to Jonathan, and had sold the same for $253, and applied the proceeds towards the discharge of the same note. It is sufficient to say, that there is no proof to this effect; nor any newly discovered evidence offered to support the statement. No reason is pretended, why Minturn & Champ-

lin's accounts were not investigated at the original hearing.

The next charge is, as to the Tennessee Land Company shares, owned by Jonathan Arnold, the proceeds of which have been received by Thomas Arnold. The whole number owned by Jonathan was fifteen; Thomas accounted before the master for nine shares, as all received by him. The petitioner had the most ample means, by a search in the proper public office at Washington, to have ascertained the whole amount received by Thomas on the shares, if he had used any diligence. The case, therefore, falls precisely within the doctrine of Lord Eldon in Bingham v. Dawson, 1 Jac. 243. But the receipt, now produced from the public records at Washington, signed by Samuel Dexter, satisfactorily establishes, that Jonathan had long before sold the six shares, now in controversy, to Dexter. And that was the very explanation asserted before the master by Thomas Arnold. There is not a shadow of proof, that he ever received on these shares any money, which he has not accounted for. I pass over the next charge, which respects the £100 note, included in the mortgage on the Paget farm. It was disposed of upon an exception of the plaintiff in the former decree, which is reported in Dexter v. Arnold [Case No. 3,855]. No new evidence on this point is pretended. The next item is for an allowance made out of Jonathan's estate in the master's report of the sum of $4.800 and upwards, due from Jonathan's estate to the estate of Welcome Arnold, and secured by a mortgage given by Jonathan to Thomas Arnold, as administrator of Welcome, and which was allowed him upon his agreeing to cancel the mortgage, which he has not done, but refused ever afterwards to do. The mortgage appears to have been given to Samuel G. Arnold, as attorney of Thomas Arnold and Patience Arnold, administrators of Welcome Arnold. I agree, that it was the duty of Thomas Arnold to procure a cancellation of that mortgage after the credit was allowed, whether he made an express promise to do so, or not. If he had a right of retainer, as administrator on both estates, he had a right to the credit allowed in settling the account. It was not matter of exception, at that time, that it was done; and it furnishes no ground of review now. The proper remedy is by an original bill to compel satisfaction to be entered on the mortgage, and a re-delivery or cancellation of it. To such a bill the administratrix of Thomas Arnold might be properly made a party; at least for the purpose of compelling an application, or re-payment of the sum credited, if the mortgage deed is not canceled, and the credit has not been already made to Welcome's estate. If such a suit should be unproductive, I do not mean to say, that there might not be circumstances, upon which this court might give leave for a bill of review, in order, that the credit might be struck out, if Jonathan's estate were to sustain a real in-

jury, as if possession under the mortgage was insisted upon, and held at law under the mortgage. At present I do no more than say, that the matter now presented furnishes no such ground.

I have thus gone over all the principal grounds for the bill of review, supposing them to be before the court with all due distinctness and particularity, and in a shape regular and tangible. If I had more leisure I might comment, somewhat more at large, upon the principles applicable to this subject. But it being my deliberate judgment, that the case is not a fit one for a review, I content myself with ordering, that the petition be dismissed with costs.

The district judge concurs in this opinion, and therefore let the petition be accordingly dismissed.