## Case No. 1,332.

### BENTLEY et ux. v. PHELPS.

[3 Woodb. & M. 403.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1847.

EQUITY — REHEARING — NEWLY-DISCOVERED EVIDENCE — NEGLIGENCE — OBJECTIONS WAIVED— MORTGAGE—PROOF OF DEFEASANCE.

1. A rehearing should be allowed in equity for reasons sufficient to justify a new trial at common law, but in general only then. If it be asked so as to open the case and offer new evidence to one of several points, the evidence must not have been known and have been neglected to be used.

[Cited in Tufts v. Tufts, Case No. 14,233; Giant Powder Co. v. California Virgovit Powder Co., 5 Fed. 201.]

[See Ready Roofing Co. v. Taylor, Case No. 11,613.]

2. Nor is it sufficient ground for a new hearing, that some of the evidence put in on the other side to that point, was not specially referred to in the opinion of the court, if it was argued by the counsel on both sides and considered by the court.

[Cited in Tufts v. Tufts, Case No. 14,233.]

3. If it be probable that on a new hearing and new evidence, the value of certain property might be shown to be less, and that question is important to one of the points in the case, it will be no ground for a rehearing, if the evidence was not before offered from negligence, and if there are other points which decide the case independent of this one, to which the new testimony relates.

4. In a bill in equity that avers a deed to have been a mortgage, it is not necessary to add that it became so by a defeasance, in order to let in proof of a defeasance, and if this point were doubtful, the objection should have been taken at the hearing, and being omitted, it furnishes no sufficient ground for a rehearing.

[Cited in Tufts v. Tufts, Case No. 14,232.]

[See U. S. v. Moreno, 1 Wall. (68 U. S.) 400.]

[In equity. Bill by Thomas Bentley and wife against Abner Phelps to have a deed, absolute on its face, declared a mortgage. Decree for complainants. Defendant petitions for a rehearing. Denied.]

This was a petition for a rehearing in a bill in equity decided between these parties at the last term of this court. [Bentley v. Phelps, Case No. 1,331.] Reference may be had to the report of that case for the statement of the facts and the opinion of the court thereon.

This petition assigned as grounds for a rehearing, the following: 1. That the deed in the other case between Abner Phelps and Mrs. Jones, mother of Mrs. Bentley, made in January, 1827, was declared by the opinion to be a mortgage, and Phelps ordered to account for rents of the premises, when it ought not to have been so declared. 2. The bill in the case aforesaid does not aver the existence of any defeasance, making said

[1] [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

deed a mortgage, when it is absolute on its face, and consequently that evidence in relation to any defeasance should not have been considered by the court. 3. That the evidence offered to show the value of the estate described in the deed of January, 1827, at the time of its conveyance, was indefinite and uncertain, except that of K. Page, and that his showed its value not to exceed the consideration in the deed. 4. That the judge who heard the other cause stated that no testimony as to the value of the premises on the part of Phelps was put in, except what appeared in his own answer, whereas he was corroborated by the testimony of K. Page, (a witness called by the plaintiff.) 5. That the books of the assessors of the city of Boston appraise said premises at a less sum than the consideration of the deed, and can be adduced in evidence, if permitted, on a new hearing.

The respondents, Bentley and wife, appeared and filed an answer to this petition, stating among other things: 1. That the original bill contained an averment that the deed before named was intended to be a mortgage, and that under such allegation the evidence as to the admissions of a defeasance by Phelps was competent, and if not so, the objection should have been taken at the original hearing. 2. That the testimony as to the value of the premises, offered by Bentley and wife, having been sufficient to be considered and argued, it cannot now be objected to for uncertainty, and more especially as Phelps on that point offered no evidence whatever. 3. That the valuation by the assessors is not competent testimony, and if it was, Phelps should have offered it before the former hearing, and because, if newly discovered, and otherwise competent, it is merely cumulative, being on a fact which has already been in issue. 4. That Phelps having delayed for more than two years to offer any evidence in the former case, he ought not to be allowed to submit any on a rehearing. 5. That this motion is made for delay.

The petitioner then filed his affidavit in support of the matter set out in his petition, and among other things, added the names of two of the assessors in A. D. 1826–7, and the belief of the petitioner that one of them would testify to the value of the premises being not over $300, and the rents which could be collected not over $30 a year, and the other to its value at $200, and that Mrs. Jones gave them to understand in the latter year, that the estate had been conveyed to Phelps, and that accordingly the entry was changed on the books from her name to his, and that his impression is they both will testify so, not from positive recollection, but belief derived from books and records and their course of business. He further states in his affidavit several supposed reasons for the low value then, and the rise and the ap-

praisal afterwards, which has been as much or more than any witness swore at the former hearing. The respondents, Bentley and wife, put in no affidavit or other testimony as to this petition, except the first answer of Phelps to the original bill, which answer had been withdrawn and another substituted, and in which first answer Phelps stated his knowledge at that time of the low valuation of this property in the assessor's books, and that it was a custom to assess property at only half its real value.

B. Sumner, for Phelps, and J Bolles, for Bentley and wife

The petition was fully heard at this term by

WOODBURY, Circuit Justice. The grounds set out in this application for a rehearing, are five in number. They are not sustained by any evidence offered by the petitioner, except his own affidavit. But taking it for granted that his affidavit states the truth, it is necessary to examine how far any good reason is shown there for another hearing of the original cause. I say good reason, for though some cases regard a rehearing as a matter merely of discretion in the court, and not a right of the party,—Daniel v. Mitchell, [Case No. 3,563;] Emerson v. Davies, [Id. 4,437,]—yet I should be sorry to have any suitor go from this tribunal without allowing him as full an opportunity to be heard as the law permits, and while any new and material light is likely to be flung on the controversy. Whether from his affidavit there exists a probability of obtaining more such light here, is the inquiry. If this probability is made out on proper facts and principles, the discretion of the court should be exerted in favor of the application. Hunter v. Marlboro, [Id. 6.908;] Doggett v. Emerson, [Id. 3,961.]

Generally as much must be shown to justify a rehearing in equity, as is necessary to obtain a new trial at common law. Doggett v. Emerson, Emerson v. Davies, and Hunter v. Marlboro, cited above; Baker v. Whiting, [Id. 786.] But, in truth, such is the character of these motions and the range of argument and inquiry indulged in them, that the party making them virtually gets the benefit of a rehearing in the discussion of the application, even if the rehearing be refused. For if the court decide against or in favor of the application, so would they usually on the rehearing. It is only when another motion is to follow a rehearing, and a new trial to be asked on new and different evidence, not all now disclosed, that this result does not in general answer every desirable purpose. I shall, therefore, go more fully into the new testimony, and the reasons which are disclosed on this application.

The first cause assigned for a rehearing is a mere general allegation that the conclusion was erroneous, to which the court be-

fore arrived, holding that the deed in controversy was in equity a mortgage and meant to secure a debt between the parties. As no reason is given under this head, why that conclusion was erroneous, and as the court in rendering judgment originally between these parties, specified the facts and numerous precedents and reasons in favor of that conclusion, I must be excused for still abiding by it and not going over them again, unless some particular causes are pointed out under the other heads, rendering it just to tax the opposite side with the trouble, expense and delay of such a rehearing.

The second ground assigned presents only a question of technical pleading. It is, whether, under a general allegation that a deed is a mortgage, a party can prove a defeasance, or numerous confessions of the other side of the existence of a defeasance. It would seem to be one of the first elements of evidence, that all particulars are to be admitted in evidence, which go to sustain a general averment. See Nesmith v. Calvert, [Case No. 10,123;] Brown v. Barrett, [Id. 1,991.] It would seem no more necessary here, after alleging that the deed was a mortgage, to proceed and state further, that it became so by a defeasance, than after alleging that a defendant had committed an assault and battery on the plaintiff, to be obliged to add, it was committed with a blow by one's hand or with a cane before evidence is admissible to prove it was so committed. In the well known case, so like this in this respect, of Morris v. Nixon, 1 How. [42 U. S.] 127, no allegation was made of a defeasance, and none in Flagg v. Mann, [Case No. 4,847.] In others, where a defeasance existed in form, it is sometimes set out distinctly. Jenkins v. Eldridge, [Id. 7,266.] Though in some it is believed to have been considered necessary to make the special averment of it, making it, however, as it used to be, a long allegation of particulars as to the mode of committing a trespass, can do no harm. In chancery, if such an averment was deemed requisite, and by its omission an error in pleading had occurred, and it was pointed out at the hearing, an amendment would usually be allowed on slight terms. See Tufts v. Tufts, [Id. 14,233,] at this term. And when not pointed out, nor objected to at the trial, defects like this are usually regarded as waived or cured. See Garland v. Davis, 4 How. [45 U. S.] 131; 1 Story, 218; [Baker v. Whiting, Case No. 786;] 16 Ves. 348; 2 Ball & B. 457. In no equitable view, therefore, would it furnish any ground for rehearing after the petitioner had argued the case without objecting to it, and after an opinion had been pronounced on the merits between the parties.

The third and fourth grounds assigned for a rehearing relate to a supposed misapprehension about the value of the property, by not considering at all the testimony of Page

as to their value. These grounds might be sufficient, if this testimony had been entirely overlooked at the hearing by the counsel and the court, and the rest of the evidence had been in truth too uncertain for any guide. But this testimony was suggested and fully argued by counsel, and considered by the court. It was not particularized in its written opinion, to be sure, as Page was not a witness called by Phelps to prove the value, but called by the other party and, to appearances, was called by them mainly with a view to show confessions of Phelps, implying that the deed was a mortgage. It is only at the close of his testimony in answer to an interrogatory, that he says anything about the value, and there observes that at auction, he does not think the land would then have brought more than the consideration in the deed, but adds that he himself would have given more for it.

As the other witnesses for Bentley and wife, who were questioned fully as to the value, seemed chiefly relied on concerning this point, and as they agreed in the main, and to a much larger sum, the result of their evidence, and not of Page's, was particularized by the court in its opinion. These, too, were corroborated, also, in their larger estimate by the high rents actually charged at times and collected, and by the high price actually given by Mrs. Jones, or her grantors, for the property originally, by the repairs which had just been made, and the general rise of most real property in a growing city. It was not considered that Page's opinion outweighed both the other witnesses, and all their corroborating circumstances; a rehearing, therefore, on account of Page's evidence not being specified, when it was argued and considered, could not be justifiable. I then suggested and still think that more evidence could easily have been offered concerning the value, if both parties had not supposed it was near what the two principal witnesses as to this testified. The natural inference then was that this might have been the reason why the defendant Phelps then put in as I meant to remark in my opinion, no evidence whatever on this point, except such as existed in his own answer. It now appears by a previous answer of his before filed and withdrawn, that he then knew all about the low assessment, which was in 1827 put on the property for city taxes, and which he now wishes to use as evidence on a rehearing. But he did not then offer even that assessment. Nor does he now plead any excuse by accident or otherwise, for not offering it before. Probably it was because he then knew and stated it was much lower than the true value. The negligence evinced by the delay in this cause would be fatal to a motion, either for a rehearing, or for a new trial on the ground of new testimony discovered. See cases in Fearing v. De Wolf, [Case No. 4,711,] and Aiken v. Bemis, [Id. 109,] 5 Russ.

195; 1 Story, 218, [Baker v. Whiting, Case No. 786;] 16 Ves. 348.

The other new testimony mentioned in the petition would also be objectionable for a rehearing, on the ground that it is merely cumulative, to the same point and fact of value. 1 Story, 230, [Baker v. Whiting, Case No. 786;] 2 Sumn. 335, [Wood v. Mann, Id. 17,-953.] It is charitable to conjecture that this extraordinary omission to offer evidence of this kind, or some other, as to the value, arose partly from another cause than assent to the value as testified to by Mr. Bell and Mrs. McLane, and that cause, an impression that the value in 1827 might not be a very material point. It is undoubted that sometimes more and sometimes less importance is attached to the value in settling the question whether the deed of the property was a mortgage or not. It is very material or not, according as the proof on that shows a great disparity or not, and as there may be several other strong proofs or not, that the deed was a mortgage. But in the present case it must be conceded that the large disparity in value to be inferred from the evidence of Mr. Bell and Mrs. McLane, and also from the large rents sometimes collected, and all the other circumstances before enumerated, made this fact a very strong point for the complainants among several others. Supposing, then, an error was committed concerning the true value, on account of the absence of the city valuations, and supposing they were more than half the true value, notwithstanding the usages referred to by Doctor Phelps in his first answer, and as large, likewise, as they would have been, had Mrs. Jones and her daughter not been the widow and the fatherless orphan, and plunged in poverty and debt so as to be favored by the assessors in a low assessment. Suppose further, that on a rehearing, the case, by still another motion, could after this neglect and delay by Phelps to offer this or other evidence, known to him before, might on heavy terms be allowed to be reopened, or a suplemental bill be filed to reach it, and new testimony as to the value be introduced, which is not cumulative, and enough to satisfy the court the disparity was much smaller than they believed at the hearing. For a rehearing would be of no use, unless the case was allowed also to be reopened for new evidence or a supplemental bill permitted in order to use it. 1 Story, 233, [Baker v. Whiting, Case No. 786;] Amb. 293, 587; 2 Ball & B. 457; 3 Johns. Ch. 124; 5 Mason, 303, [Dexter v. Arnold, Case No. 3,856.]

Yet after all this, the decree must stand. All the other points and grounds to show the deed to have been a mortgage, and several of them dwelt on longer and more decisive than this, would still remain unobviated, unimpaired, and require a judgment again for the original complainants. This is very manifest, and consequently would render a rehearing useless on this point, if

nothing new could be proved on the others. There would still be all the evidence to show a mortgage by Phelps, frequent admissions as to a defeasance, all as to his express and repeated statements it was a mortgage, and should be treated as a mortgage, and even to Page himself, concerning his moral right not to use it otherwise, all as to the relation of creditor and debtor long existing between the parties, to indicate that taking the deed was meant for security, rather than an absolute purchase, all the alterations by some one of a number of the receipts in Phelps's possession to change the aspect of the payments from interest on a debt as if a mortgage, to rent on a lease, all the written evidences delivered by him to Mrs. McLane, indication of an old debt still existing on account of his loans to Mrs. Jones, and, in short, numerous dark clouds which hang over the transaction, against an absolute sale, and in favor of a mortgage. Until Dr. Phelps can discover evidence on his part to put a different face on these points, and he does not pretend it can be done, until he can show that others have been tampering with his papers, and without his sanction making material alterations, and that others have been guilty of exaggeration, equivocation or perjury in their evidence against him, a rehearing would be of no use, and there would seem to be no sufficient justification for the delay and expense attending it. Even if granted, it must be followed by the still further delay and expense of an application to reopen the case for new evidence, and this, after all, to only a single position out of several others, and which others prove very strongly, independent of this one, that the deed to him was meant to be considered a mortgage.

One other consideration, and I have done. As the case now stands, the consequences of that decision do not seem so severe on Dr. Phelps as to require any stretch of interference or sympathy to grant any unusual indulgence. He is entitled to what is right, however, and shall receive it, so far as he can on the evidence. He will now be allowed to receive all his debt, with interest on the whole to this time, and due charges for repairs, taxes and proper expenses, and the only privation which he must suffer by treating the case as proved to be a mortgage, is, that the orphan daughter of his widowed debtor, instead of himself, will be permitted to receive any benefit from the greater value of the property now, than the amount which is justly due to him. It will be seen that in these remarks I have covered the fifth ground assigned for a rehearing, as well as all the other grounds, and that I do not feel justified in granting it on account of either of them. Rehearing disallowed.