HERCULES L. DOUSMAN AND WIFE, Appellants,

*vs.*

EMILIE HOOE, Executrix of the estate of Joseph Rolette, deceased.

APPEAL IN EQUITY FROM THE CRAWFORD CIRCUIT COURT.

A supplemental bill in the nature of a bill of review, can only be filed before enrollment of the decree, to bring in new matter discovered since publication, in the original cause.

The facts which it is desirable to bring in by a supplemental bill in the nature of a bill of review, must be material and pertinent, and must be set out in a petition for leave, so that the court may judge of their materiality and pertinency and such bill can only be filed on leave of court.

It is not necessary, under modern practice, to set forth in the decree, the matters or facts proved on which it is based, nor to recite the pleadings and proof. The pleadings and proof are now considered matters of record, and it is not necessary to recite them in the decree.

Where the term "defendants" is used in a final decree, without specifically naming any one of them, it will be held to comprise all those who are made parties as such by the process service thereof and pleadings.

When the prayer of the bill was for specific performance, and for an account of the rents and profits, &c., and the decree was for specific performance without decreeing an account, it was held that this omission was not an error of which the defendant could complain, or for a supplemental bill in the nature of a bill of review on his part, or for a re-hearing.

Matter of abatement is no ground for a bill of review, or a supplemental bill in the nature of a bill of review.

The direct grant by act of Congress of the fee of the land which had been in the United States, is a higher evidence of title than a patent, which is only the act of the ministerial officers of the government.

When the title to land vests by grant made by a direct act of Congress, it cannot be defeated by a subsequent patent purporting a different conveyance.

The act of Congress approved Feb'y 21, 1823, confirming the report of the commissioners appointed to ascertain and decide upon claims to lands in the districts of Green Bay and Prairie du Chien, vested the title to the lands described in the claims so confirmed, in the respective claimants. Such act of confirmation became the source of title, and is of higher evidence than any patent that might have been issued for the same lands.

The title of the lands so vested by the act of confirmation before mentioned, is

not a mere chose in action; not an equitable title merely, but a legal title carrying the whole estates superior to any that could be conveyed by a patent subsequsntly issued.

An improper application of the proofs is not a ground for a bill of review, or a supplemental bill in the nature of a bill of review.

Upon an application for leave to file a bill of review, or a supplemental bill in the nature of a bill of review, the court will not look into the evidence on which the decree is based to discover its weight or pertinency, but will examine the errors if any apparent on the face of the decree, and the merits of the application as disclosed by the facts of the petition.

June Term 1854.

Dousman
vs.
Hooe.

On the 29th day of August, 1843, the complainant, Jane F. Rolette (now Jane F. Dousman,) filed her bill of complaint in the District Court of the United States of the Territory of Wisconsin, in Crawford county, against Emilie Hooe and others, the purpose and nature of which, together with the proceedings thereon, and the determination thereof in said court will appear by the petition hereinafter set forth.

The cause proceeded to a final decree, after which a petition for re-hearing was filed in the Circuit Court of Crawford county, which succeeded to the jurisdiction of the former District Court of the territory; which petition sets forth the pleadings and all the proceedings had in the cause, the material points of which are as follows:

That Jane Fisher Rolette, of said county, filed her bill of complaint in the District Court of the United States in and for said county, on the twenty-ninth day of August, in the year of our Lord one thousand eight hundred and forty-three; that the said Jane F. in said bill, substantially set forth and alleged, that one John B. Cardinal, (since deceased) was the owner and occupier of two certain tracts or parcels of land, situate at the old French settlement at Prairie du Chien, in the present county of Crawford, which said tracts of land had since been surveyed by the authority

of the United States, and designated on the connected map of private land claims at Prairie du Chien, aforesaid. The one as farm lot number (3) and the other as farm lot number six (6;) that said Cardinal in his life time, and before deeds of conveyance were used among the French settlers at Prairie du Chien aforesaid, sold the said two tracts of land to Henry Munroe Fisher, who was the father of the said Jane F., and delivered the possession of the same to the said Fisher, who paid him therfor, and who " continued to hold and occupy the same, until he conveyed the same to the said complainant as thereinafter set forth." And further, that after the said two tracts of land so sold and delivered by the said Cardinal to the said Fisher, the said Jane F. intermarried with Joseph Rolette, since deceased, and after the said intermarriage, her father for a good and valuable consideration, sold and conveyed both of the said two tracts of land above mentioned, to her, the said Jane F. and her heirs, *the issue of her marriage with the said Joseph Rolette,* forever, by deed bearing date the 5th day of December, 1823, which deed was duly recorded in the office of the register of probate for the said county of Crawford, a certified copy of which deed the said Jane F. filed therewith, and that although the said tracts of land as described in the said deed, were not numbered therein as they are numbered on the said connected map of private land claims, yet that they were described with sufficient certainty to identify them with the numbers above stated on the said connected map.

And further, that although, according to the rules of the English law, the said deed would have vested in the said Jane F. only an estate-tail in the said lands therein mentioned and described. Yet that by the

laws of the Territory of Michigan, (which Territory included said Prairie du Chien,) and that said laws were in force at the time, and by the laws which had ever since then, been in force in said Territory of Wisconsin, then since its organization, that the said deed created in the said Jane F. an absolute allodial estate in the lands without any limitation, restriction or condition whatever. And further, that by virtue of the said deed from her said father, her late husband, Joseph Rolette, entered upon and occupied the said two tracts of land during the remainder of his life, and that he did so as her husband, and under the said deed from the said Fisher, and without any other just or equitable right whatever, than such as he acquired as her husband. And further, that by virtue of the laws of the United States, confirming the claims of private individuals to lands at the settlement of Prairie du Chien and other places, the right and title to the said two tracts of land were confirmed to her, the said Jane F., when the agent or commissioner of the United States was at Prairie du Chien, aforesaid, to investigate the private claims to lands at the settlement aforesaid, to receive entries thereof and take testimony in support of the same, the said two tracts of land numbered three and six, on the said connected map of private land claims, were entered before the said commissioner or agent in the name of her, the said Jane F., and that her right thereto was fully proven before him, according to the laws of the United States, and that her claim to the same was duly confirmed by the proper authorities of the United States. But that the name of the said Jane F. (as she stated) by some mistake in the office in making the said entries, was written, as

June Term
1854.

Dousman
vs.
Hooe.

she had thereafter understood, *Jean* instead of *Jane*, though in the said entries, it was expressly stated that they were made by the wife of Joseph Rolette, showing conclusively that they were the entries of the said Jane F. and not of any such person as *Jean* Rolette, which mistake probably arose from the supposition of the person who made the said entries that *Jean* was the French mode of spelling *Jane* instead of *John*, the name of a man, which it really is.

And further, that patents from the United States had been issued for both of the said farm lots of land numbered as aforesaid, but that by fraud, accident or mistake, they had not been issued to the said Jane F. as in justice and equity they ought to have been issued, according to said entries, and that for some reason wholly unknown to her, the said Jane F., the patent for said farm lot number three (3) bearing date the 12th day of October, 1830, was issued to Joseph Rolette, the then husband of the said Jane F., which inequitable and unjust patent was against the just and equitable rights of the said Jane F., and was, as she believed and charged, procured to be issued by fraud, or was also the result of accident or mistake.

And further that the patent for the said farm lot number six (6) bearing date also on the 12th day of October, 1830, was issued to *Jean Fisher Rolette*, and to his heirs, " when in equity and justice, it ought to have been issued to" the said " Jane Fisher Rolette, and to her heirs," as the entry and confirmation of the said lot were by and to the said Jane F., and that there never was any such person as John Fisher Rolette, who had any claims to lands at Prairie du Chien, particularly to said farm lot number six, and that said last mentioned patent was so issued, as she

supposed, by mistake, and from the two names of the said Jane F. being misapprehended and misunderstood at the General Land Office.

And further, that the said entries of the same tracts were made in the name of the said Jane Rolette, as aforesaid, on the tenth day of October, 1830, and that the father of the said Jane F. had deeded. the said two tracts to the said Jane F. by a former deed, executed before the said entries were made, but that said former deed was not placed upon record, and that the said Jane F. had no knowledge what was done with it, but that she supposed that it was delivered to the said Joseph Rolette, who, as her husband, contracted and managed all the affairs relating to her estate, and that said former deed had been lost, mislaid or destroyed.

And further, that her father, the said Henry Munroe Fisher, had then long since departed this life, and that her husband, the said Joseph Rolette, also departed this life on the        day of December, 1842, having previously made and published his last will and testament, in which he appointed his daughter, Emilie Hooe, his son, Joseph Rolette, Jr., and one Charles J. Learned, his executors. That the said Emlie had made proof of said will and qualified as such executrix, and taken upon herself the burden of executing the same, and that both of the other executors named in said will had failed to qualify as such, according to law.

And further, that her said husband, at the time of his death, left three children living, to-wit:—Emilie, who had formerly intermarried with Alexander S. Hooe, Elizabeth Rolette, who were both children by a former wife, and Joseph Rolette, Jr., who is the

June Term 1854.

Dousman vs. Hooe.

son and only living child of the said Jane F. And further, that her said late husband, by his said last will and testament, attempted wrongfully and unjustly, to dispose of her said two farm lots of land above mentioned by way of devise to and amongst his children; and that since the decease of the said testator, his said daughter Elizabeth, had also departed this life, and that the said Emilie Hooe, executrix as aforesaid, and her said husband Alexander S. Hooe, by themselves or agents, had taken possession of the estate both real and personal, of the said testator, and had taken as a part of said estate, the two farm lots of land above mentioned, and claimed to own the same by some pretended right or other, as belonging to the said Emilie Hooe, by some pretended devise, either from her said father, or from her said sister Elizabeth, or as one of the heirs at law, of the said testator, or that it belonged to them in their fiduciary capacity, as a part of the estate of the said testator, and would be assets in their hands, in case of a deficiency of personal assets, and that they refused to deliver the possession thereof to the said Jane F., as she was in justice and equity entitled, to receive the same in her own right upon the death of her husband, as aforesaid.

And further, that one John H. Manahan, was in possession of a part of the said farm lot number three, and had erected a tan-yard thereon, which he had used and carried on for several years, under some sort of contract entered into between him and the said testator in his life time, and that he still continued to hold the possession of the same under the said executrix, Emilie Hooe. And that there was a grist mill on the said farm lot number three, (3) which was

June Term
1854

Dousman
vs.
Hooe.

kept in operation by the said Alexander S. Hooe, and Emilie, his wife, executrix as aforesaid, and that neither the said Alexander S. Hooe and Emily, his wife, executrix as aforesaid, nor any of their tenants in possession of either of the said farm lots aforesaid, or any part thereof, would deliver the possession thereof to the said Jane F., or permit her to receive the rents, issues and profits thereof, or any part of the same, as she in justice and equity was entitled to in her own right.

And further, that from the irregular and erroneous manner in which the patents from the United States, had been issued for each of the said two farm lots of land respectively, as thereinbefore set forth, she would in all probability be unable to recover the said lands or any part thereof, in an action at law, although in equity she was justly entitled thereto in her own right without any claim whatever of any other person, and that she had hoped that the said executrix, and the said devisees and heirs at law of the said testator, who well knew the just rights of the said Jane F. in the premises, would surrender and deliver the possession of the said two farm lots of land to the said Jane F., to be by her enjoyed and held to her sole use and benefit, without any let or hindrance on their part, as equity and good conscience would require them to do.

And the said complainant in said bill charged that her said late husband the said Joseph Rolette, deceased, never had any right, title or interest, (except what he acquired by the said irregular and fraudulent patents,) either legal or equitable, in and to either of the said farm lots of land or any part thereof, except such right or interest as he derived from the

said oratrix as her husband during coverture, which right ended with his .death, and would not descend to his heirs or be transmitted by his will to his devisees.

And the said complainant further charged that she had never in any way, parted with her right to either of the said farm lots of land or any part thereof in any manner binding upon her—that the patent to the said farm lot number three, was issued to her late husband, by fraud or mistake, was contrary to the entry and confirmation of the said farm lot, made in the name of the said oratrix, and ought to be vacated and set aside, and her superior equitable title established.

And further, that the patent for the.said farm lot number six, was issued by fraud, accident or mistake, to *Jean* Fisher Rolette and *his* heirs, when it ought in justice and equity, to have been issued to the said Jane Fisher Rolette, and her heirs—that there never was any such person as *Jean* Fisher Rolette who had any claim to said land or any other land at Prairie du Chien—that said Patent was contrary to the entry and confirmation of the said farm lot number six, made in the name of the said complainant, was a fraud upon the equitable right of the said complainant and ought to be vacated and set aside, and her superior equitable title established.

And further, that she was in equity, entitled to all the rents, issues and profits of the said two farm lots of land, and each of them and their appurtenances, which had accrued since the death of her said late husband, or which should thereafter accrue, and that the said John H. Manahan and all other persons in possession of any part of the same ought in equity, to

be required justly and truly to account to and with
the said complainant for all such rents, issues and
profits as aforesaid.

And further, that the said Emilie Hooe, executrix
as aforesaid, and the said Joseph Rolette, Jr., are the
only heirs at law of the said testator, Joseph Rolette,
deceased, and the only devisees under his said will,
now living, whose claims under the said will, in any
way, can effect the claim of the said complainant to
the said farm lots of land—that the said Emilie Hooe,
executrix and devisee as aforesaid, and the said Alex-
ander S. Hooe, her husband, and the said Joseph Ro-
lette, Jr., although they well knew the just and equit-
able right of the said complainant to the said two
farm lots of land, absolutely refused to surrender and
relinquish the same to the said complainant, and set
up some pretended claim in themselves to the said
lands, sometimes pretending that the same actually
belonged to the said testator at the time of his death,
and that they will be assets in the hands of the said
executrix in case of a deficiency of personal assets,
and if there should be no such deficiency, that they
will descend to his heirs at law.

Complainant further prays, that the said Alexan-
der S. Hooe, and Emilie his wife, executrix, &c., as
aforesaid, the said Joseph Rolette, Jr., and the said
John Manahan, may be compelled justly and equita-
bly to account to and with complainant for all the
rents, issues and profits of the said lands which have
been made, or which ought to have been made from
the same, since the death of the said testator, and that
in the mean time, some suitable and proper person
may be appointed a receiver to collect and receive all
such rents, issues and profits as shall hereafter accrue

until the final termination of this suit, and that then the same may be decreed to the complainant.

The complainant further prays, that at the final hearing hereof, the said fraudulent, irregular and erroneous patent for the said farm lot number three, may be vacated, annulled and set aside, and that the said fraudulent, irregular and erroneous patent for the said farm lot number six, may also be vacated, annulled and set aside, and that the said defendants, or such of them as may set up any claim to the said lands, or any part thereof, be compelled by decree to relinquish by deed in proper form, and duly executed to the complainant and her heirs forever, all and any such claim or claims to the lands or any part thereof, or that the absolute legal title in and to the said two farm lots of land above mentioned, and each of them with their appurtenances, be passed by decree to complainant and her heirs and assigns forever.

And complainant further shows to this Court that she and her late husband, Alexander S. Hooe, being served with Subpœna for that purpose, appeared and put in their answer to the said bill as follows, to-wit: "That they have no personal knowledge that Jean Baptist Cardinal ever was the occupier of the farm lots Nos. 3 and 6 (three and six,) near Prairie du Chien, as set forth in said complainant's bill—they therefore neither admit nor deny that the allegations in said bill are true, but leave the complainant to prove the same by competent testimony as the law requires. But the respondents, from the best information they can obtain, deny that the said Cardinal ever was at any time the legal owner or legal occupant of any portion of said two lots of land

hereinbefore described, as alleged in complainant's said bill, or that the said Cardinal ever held any such title, right or interest in or to either of said lots of land before mentioned, as authorized him to sell and convey the same or any part thereof, so as to vest any legal title whatever in the said Henry Munroe Fisher, or that the said Fisher was vested with any such legal title, right or interest in and to the aforesaid two lots of land as authorized him to convey the same by deed of bargain and sale, gifts or other mode of conveyance, so as to invest any estate in fee or allodial title or other legal interest in the complainant to said lots of land as is alleged in said bill—and the respondents aver, that if any such deeds, conveyances, or evidence of title were ever made, as is pretended in said bill, they verily believe that they were so made in violation of the laws of the land, and are void in law and in equity.

And the respondents further answer and say, that from the best information they have been able to obtain, they verily believe and aver, that if the said Cardinal had ever any interest whatever in said two lots of land, the same was a mere naked possessory interest, the occupancy thereof acquired by an unauthorized entry upon them as parts of the public domain—and that he was a trespasser thereon, instead of the rightful owner thereof, and that such occupancy confirmed no legal right or authority in said Cardinal to sell, convey or dispose of the land itself, the title to which never was vested legally in him, and that the said Fisher never acquired any other or better title, or higher degree of interest in said two lots of land, than the said Cardinal held at the time the pretended conveyance was made, which is alleged in

said bill, and they deny that the said deed of conveyance from the said Fisher to the complainant exhibited with and made a part of said bill, conferred any other or better title to the said two lots of land or any interest therein, upon the said complainant than the said Cardinal had in the same, and the respondents totally disbelieve that any other deed of conveyance from the said Henry Munroe Fisher to the said complainant, ever was made, executed and delivered, except the one dated the fifth day of December, A. D. 1823, and exhibited with said bill, and they deny that any such other deed as is pretended in said bill ever did exist.

The respondents admit that the said Joseph Rolette departed this life in the month of December, 1842—that he made and published his last will and testament, and appointed the executors mentioned in the bill of complainant. And that the respondent Emilie Hooe, has qualified as executrix of the said last will and testament, as the law requires, and has taken upon herself the sole executorship of said will as set forth in said bill; and the respondents admit that the said Joseph Rolette at his death, left three children, Emilie, his executrix as aforesaid, wife of Alexander S. Hooe, Elizabeth Rolette, since deceased, and Joseph Rolette, Jr., as stated in said bill. The respondents also admit that the said Joseph Rolette, by his last will and testament, did devise and dispose of the said two lots of land as will appear by a reference to said will, as he had a legal right to do; but they deny that the same was devised and disposed of wrongfully or unjustly, as is charged in said bill. The respondents also admit that the said Emilie Hooe, executrix as aforesaid, has entered into and

taken possession of the real and personal estate, of which the testator was lawfully seized and possessed at the time of his death, as far as the same has come to her knowledge, as she was authorized by law to do, and among said property, the said two lots of land ; and she claims the legal right to hold and possess the same by title derived from the said testator, and also as his heir at law with the said Joseph Rolette, Jr., and the respondents allege that the said Emilie Hooe has the legal and equitable right to hold and possess all the aforesaid property, including the two said lots of land, as the legal assets of the said estate, to be disposed of as the law requires—first, as executrix of the said estate, and secondly, with the said Joseph Rolette, Jr., as heirs at law and devisees under the will of the said Joseph Rolette, deceased.

The respondents admit that one John H. Manahan, was in possession of, and occupied a part of the said lot number three, as a tenant, at the time of the death of said testator, under a contract entered into between the said testator and the said Manahan, and they also admit that there has been made and erected upon said lot number three, a large grist mill and other valuable improvements which have cost upwards of ten thousand dollars, as nearly as they can ascertain the costs of the same, all of which, said improvements they allege, were made upon said lots by the testator in his lifetime out of his own funds, and after his right accrued to hold, possess, occupy and improve the same by the laws of the land, and they deny that the said complainant has any legal or equitable right to interfere with said property or the rightful possession thereof. The respondents deny unequivocally, that Patents for said two farm lots Nos. 3 and 6, were

erroneously issued by the government of the United States, or that they or either of them were obtained unfairly, illegally, by fraud, collusion, or any other unfair or illegal means or practice whatever, but on the contrary, from their knowledge and recollection of the transaction, they express their confident belief that the said patents, and especially the patent for lot number three, were issued by the government in strict conformity with the laws of the land, and the legal rights of the complainant, and the said testator and.they deny that the said complainant has any equitable right to maintain and prosecute this suit against them in the court of chancery, and they deny that the complainant, if she has any remedy at all in the premises, has not a full, complete and ample remedy at law, and they allege that she cannot resort to a court of equity for relief, until she has exhausted her remedy at law, which she has not done.

The respondents each of them deny all fraud, combination, confederacy or collusion in relation to any of the matters and things set forth in the complainant's said bill, or any design or intent to do any act or thing in relation to the premises that is not strictly consistent with law, equity and conscience.

The respondents deny that the complainant is entitled either in law or in equity, to any such right, interest or estate, in or to said farm lots of land and premises, or in any part thereof, either in her own right or through the pretended possession of the said Cardinal and the said Fisher, as she has charged in her said.bill, or by virtue of any deed of conveyance from the said Fisher, or by or through any entries or confirmation of a claim to said lots by virtue of any law of the United States, the State of Michigan or

Wisconsin, by which any legal title to said lots of land, or either of them, are vested in the complainant, and which can be confirmed to her by a court of equity, as alleged in said bill.

The respondents deny that by the laws of the land the patents for said farm lots ought to have been issued to the complainant and *her heirs*—and they deny that if the said testator derived any benefit or interest in aid of his legal title to said lots of land by virtue of his coverture with the complainant, that such right or interest expired at his death, as is charged in said bill, but on the contrary, these respondents insist that any such equitable right or interest of the complainant, if any such she ever had, vested absolutely in the testator.

The respondents deny that the patent for farm lot No. 3 was issued to the testator by fraud or by mistake, as is charged in said bill, or that it ought, either in law or equity to be vacated to establish the pretended right of the complainant, or that this court as a Court of Equity, has any jurisdiction to annul or vacate the same by any decree or judgment thereof, but on the contrary, they aver, that from the best information they can obtain, the said patent was issued in strict conformity to law, and to the person who was vested with the legal, equitable interest unto the same, and who, as these respondents allege, paid all the purchase money thereof out of his own funds to the United States for said lands.

The respondents deny that the complainant is entitled in any manner, to any of the rents, profits or issues arising from said lots of land, as claimed in said bill, or that she has any right to call upon the

32

said executrix, to account with her for the same, or for any part thereof.

The respondents admit that the said Emilie Hooe, executrix as aforesaid, and the said Joseph Rolette, Jr., are now the only surviving heirs at law of the said Joseph Rolette, deceased.

And the respondents admit that they do claim title to said two farm lots of land as heirs at law of said testator, subject to the payment of his just debts, and as devisees in his said will, without any false pretences, subterfuges or prevarication whatever, as she alleges in said bill of complaint.

And the respondents, the said Alexander S. Hooe, as husband of the said Emilie Hooe, the aforesaid executrix, and who as such, has been made a party defendant in said suit, and the said Emilie Hooe, executrix as aforesaid, having answered all and singular, the several allegations in said bill, as far as the facts are severally known and understood by them or either of them, and according to their best judgment and belief, without this that there is any other material matter or thing in said bill contained that is not traversed, admitted, denied, or explained away.

And they pray to be hence dismissed with their costs in this behalf, unjustly sustained.

And your petitioner further shows that the deed, annexed to the bill of complaint aforesaid, of the said Jane F. Rolette, and filed therewith, and made a part thereof, as per the said copy so filed, is in the words following, that is to say—

This indenture, made this fifth day of December, in the year of our Lord, one thousand eight hundred and twenty-three, between Henry Munroe Fisher, of

Prairie du Chien, of the one part, and Jane Rolette, daughter of the said Henry, of the other part—Witnesseth, that the said Henry, as well for and in consideration of the natural love and affection which he, the said Henry, hath and beareth unto the said Jane, as also for the sum of one hundred dollars, to him in hand paid by Joseph Rolette, Esq., husband of the said Jane, for and on behalf of the said Jane, at the time of the ensealing and delivering hereof, hath given, granted, aliened, enfeoffed and confirmed, and by these presents doth grant, give, alien, enfeoff and confirm unto the said Jane Rolette and to her heirs, the issue of the present marriage between the said Jane Rolette and the said Joseph Rolette, Esq., and to their assigns forever, all that certain messuage farm or tract of land situate at Prairie du Chien, on Fisher's Creek, the same being a *coulee*, bounded in front by a line running from a bluff on the north side to one on the south, four acres more or less, on the north by a farm claimed by the heirs of James Aird, and running an easterly course one hundred and eighty acres, on the east by vacant lands, and on the south by a farm claimed by Joseph Rolette. Also one other tract or parcel of land, being four acres in front by one hundred and twenty in depth, bounded in front by a sluice of the Mississippi river, on the north by a farm claimed by the heirs of Felix Mercier, and on the south by a farm claimed by Madeline Lawthier, together with all and singular the hereditaments and appurtenances to the said several parcels before described, belonging or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof, and all the estate, right, title, interest, property, claim and demand

whatsoever, of him the said Henry, of, in, and to every part and parcel thereof, with their and every of their appurtenances. To have and to hold the said messuages, tenements, hereditaments, and all and singular the premises hereby granted and confirmed, or mentioned, or intended so to be, with their and every of their appurtenances, unto the said Jane and the heirs of body as aforesaid, and their assigns to the only proper use and behoof of her, the said Jane and her heirs and their assigns forever. And the said Henry, for himself, his heirs, executors and administrators, doth covenant, grant, and agree to and with the said Jane, her heirs and their assigns by these presents, that they shall, and lawfully may, at all times hereafter, quietly have, hold, use, occupy, possess and enjoy the said messuages, farms, lands, tenements, hereditament, and premises, hereby granted and confirmed, with their and every of their appurtenances, free, clear and full discharged, or well and sufficiently saved, kept harmless and indemnified, of, from and against all former and other gifts, grants, bargains, sales, jointures, dowers and estates, and of and from all former and other titles, troubles, charges and incumbrances whatsoever, had, done or suffered, or to be had, done or suffered by him, the said Henry, his heirs and assigns, or any other person or persons lawfully claiming or to claim, by, from, or under him, them, or any of them.

And in order that this grant of the lands hereinbefore described, may be the more clearly understood, it is hereby expressly declared as the intention of the said Henry, and of the meaning hereof, that the said lands and premises are, and shall continue to be, the property of the said Jane and of such children as

have been and may hereafter be born of her, the is-
sue of the said marriage between the said Jane and
the said Joseph Rolette, Esq., from the time the said
marraige was solemnized, until the same shall be legally terminated.

In witness whereof, the said parties have hereunto set their hands and seals, the day and year first above written.

HENRY MUNROE FISHER,
JANE ROLETTE.
JOSEPH ROLETTE.

And the petitioner further shows that whilst said bill was depending and unheard and undetermined, by the said District Court, that the said complainant, Jane F. Rolette, intermarried with and became the wife of one Hercules L. Dousman, of said county of Crawford, and who now and continually since said marraige, has resided in said county and at Prairie du Chien, and that the said Hercules and Jane F. are now cohabiting as husband and wife, and that they have done so continually since the date of said marriage; that said marriage was solemnized on or about the twenty-sixth day of December, in the year of our Lord one thousand eight hundred and forty-four.

And the petitioner further shows, that no bill of revivor, supplement, or bill in the nature of a bill of revivor, or supplement, alone or conjoined, has ever been filed in said cause, since the said marriage took place, and your petitioner saith that she is advised that by the said marriage, the said suit became abated, or at least so defective that the said Jane F. could not legally proceed to a decree, until the said suit was made perfect by another bill.

And the petitioner further shows to this court, that

the said Jane F. filed her replication to the joint and several answers of your petitioner, and her late husband, Alexander S. Hooe, now deceased, in said District Court, on or about the eighteenth day of October, in the year of our Lord one thousand eight hundred and forty-four.

And the petitioner further shows, that afterwards to wit—at the May term of said District Court, A. D. 1847, the said cause was heard before said court, on the bill, answer and replication aforesaid, with the proofs and exhibits in said cause, taken and produced therein, and that the court, (as by the record appears,) not being sufficiently advised, took time to consider. And that afterwards, (as by the record of said court appears,) a decree was made by said court, to-wit—at the October term, A. D. 1847, and on the fifth and last day of said term.

And she further says, that she is informed, believes and alleges the fact to be, that said decree was not reduced to writing, nor any part or portion thereof at or during the term last aforesaid, nor for a long time thereafter.

And further, that she is informed, believes, and she states the fact so to be, that upon the adjournment of the court at the term aforesaid, one of the counsel for Jane F., Samuel Crawford, Esq., took from the files of said court, the papers in said cause or a part thereof, and carried them to Mineral Point, in the county of Iowa, and there kept them until on or about the        day of July, A. D. 1848, at which time he caused said papers, with a draft of decree in said cause, to be deposited with the clerk of said court, and that the said Crawford then and there directed the said clerk to copy the said draft of decree

on the record of said court, as of the last day of the aforesaid October term, A. D. 1847, as the time when said court announced what his decree would be as aforesaid, and that said clerk did copy the same in the record of said court, as a part of the proceedings of said court, on the said last day of the said term of October, in the year of our Lord one thousnd eight hundred and forty-seven, in the words following, that is to say : "That the fee simple title of and unto farm lot number three (3), as the same is set forth and designated on the connected map of the private land claims in Prairie du Chien, in the county of Crawford, Wisconsin Territory, containing six hundred and thirty acres and fifty-three hundredths of an acre, bounded westward by lots numbered one (1) and four (4), and on all other sides by the public lands, be and the same is hereby vested in the said complainant, Jane F. Dousman and her heirs, and the said defendants and all other persons whatsoever, claiming or to claim, by, through, or under them, by virtue of the patent heretofore issued by Andrew Jackson, the then President of the United States, bearing date the twelfth day of October, eighteen hundred and thi rty, under the seal of the General Land Office of the United States, are hereby ferever barred and divested of all right, title, claim or estate, either legal or equitable, of, in, or unto the said farm lot number three (3), and it is hereby further ordered, adjudged and decreed, that the said bill of complaint, so far as it relates to farm lot number six (6), mentioned in the bill of complaint herein, be and the same is hereby dismissed. And it is further ordered, adjudged and decreed, that the said complainants do have, and recover of, and against the said defendants, their

costs about their complaint in this behalf expended, and that they may have execution therefor.

And the petitioner further shows, and states the fact to be, that neither the said draft of decree, nor any decree in said cause was, or has ever been signed by the said judge of said District Court, nor by any other judge, or by any court, but that the said draft of decree now remains unsigned, so that the same could not or cannot (as she is advised,) be enrolled or be attached with the other papers in said cause, or any of them, as by statute is and then was provided—and further, that she is advised that none of the judges or courts of this State, have a right to, or ought to sign the said draft of decree, nor any decree that may have been made by the said District Court, so as to perfect the same.

And the petitioner further shows, that the said Alexander S. Hooe, her late husband, departed this life on or about the eighth day of December, in the year of our Lord one thousand eight hundred and forty-eight.

And further, that she now is, as she is advised, the sole and only owner, in fee simple absolute of the said two farm lots, and particularly the said farm lot number three, and that she has a legal and equitable right to have, hold, possess, and enjoy the same without let, hindrance or molestation from any source, or from any person or persons whomsoever, and that she could do so, but for the proceedings in this cause aforesaid.

And the petitioner further shows, that by reason of the great delay in the entering said decree, (if such it can be considered,) on the record of said District Court, and the failure to have said draft signed by

the court, she and her late husband, Alexander S.

Hooe, now deceased, lost the right to take an appeal, or were placed in a condition so that they could not appeal under the then statute of Wisconsin.

And the petitioner further states the fact to be, that she had no knowledge or information that a decree had been announced or made in said cause, until some time during the summer of the year one thousand eight hundred and forty-eight, and after the fifteenth day of the month of June, of the year last aforesaid.

The petitioner further shows, that she finds herself much aggrieved by the aforesaid decretal order, and she hereby saith that she is advised, and humbly conceives, that the said decretal order is erroneous upon its face, in the particulars following, that is to say—

1st. It doth not appear in and by said decretal order that the said District Court considered any particular thing proved upon which the said decree is founded, nor doth said decree set forth any fact upon which the same is based.

2d. It appears upon the face of said decree, that some of the defendants named in said bill, to-wit: Joseph Rolette, Jr., John H. Manahan, and *Jean* F. Rolette, are not parties to or named in said decree.

3d. It is apparent upon the face of said decree, that only a part of the subject matter in said bill mentioned, and in dispute between the parties to said suit, are disposed of by the terms of said decree, in any wise or manner, but that the matter of accounting for, or concerning the rents, issues and profits of the said two farm lots in the said bill mentioned, are not decided in any way.

4th. It is apparent upon the face of said decree,

that Hercules L. Dousman is named as one of the complainants in said cause, whereas by the record of said cause, it no where appears that the said Hercules L. Dousman was one of the complainants, but that he appears to be named in said decree by reason of his intermarriage with the said Jane F., whereas by the law of the land, the said Hercules L. could only have been made a co-plaintiff by bill, subsequent to the said bill of the said Jane F., and subsequent to the said marriage.

5th.   The said decree is variant from the case made by the said bill, and is also variant from, and not in conformity to the prayer in said bill.

6th.   The said degree is inconsistent with itself in this, that the title to farm lot number three, is first decreed to be in the said Jane F. Dousman, and then it is decreed that the said defendants and all other persons whatsoever, claiming or to claim, by, through or under them, by virtue of the patent heretofore issued by Andrew Jackson, the then President of the United States, bearing date the twelfth day of October, eighteen hundred and thirty, under the seal of the General Land Office of the United States, *are hereby forevever barred and divested* of all right, title, claim or estate, either by legal or equitable of, in, or to the said farm lot number three (3), which portion of said decree, if it could prevail, would divest a title previously decreed to be in the said Jane F. Dousman.

7th.   The said decree is contrary to the answers of the said Alexander S. Hooe, and your petitioner; the exhibits, proofs, or evidences produced at the hearing.

8th.   The case in point of law was the same before

the said District Court, as to both of the said farm lots, save that as to farm lot number six, the patent issuing to Jean F. Rolette, was stronger evidence of mistake, or an irregular, or erroneous issue of the patent, than in the case of the patent issuing to Joseph Rolette, yet by the said decree the said bill was dismissed as to farm lot number six.

Whereupon your petitioner humbly prays, that this court will be pleased to vouchsafe a rehearing of the cause before your honor, your petitioner submitting to pay such costs as the court shall award, in case her complaint shall be found to be groundless.

On the hearing of this petition, the Circuit Court of Crawford county made the following order :

" On reading and filing the affidavits and petition of the defendants in this cause, and on motion of James H. Knowlton, Esq., of counsel for the defendants, and on hearing Samuel Crawford, Esq., of counsel for the complainant, agreeably to stipulations heretofore made in this cause, it is ordered that the petitioner (defendants aforesaid,) be at liberty to file a supplemental bill, in the nature of a bill of review, to bring before the court, the matter stated in such petition, and for relief, as he shall be advised, upon compliance with the rules of court and the law in such case made and provided."

" And further, that he is at liberty to have the original cause brought on to be reheard, and to come on at the same time, with the cause upon such bill."

Done at Chambers, this 16th day of February, A. D. 1852.

"It is further ordered, that an appeal be granted to the complainants, upon filing bonds with two sureties, in the sum of two hundred dollars each, they justi-

JUNE TERM
1864.

Dousman
vs.
Hooe.

fying according to law. It being considered doubtful whether official duty will not require the absence of the judge of said court, at the time such sum of said appeal bond shall be affixed by this judge."

The complainants (respondents to the petition,) filed their bond and perfected an appeal from said decretal order in due form.

The cause was elaborately argued by the counsel for the respective parties, and the several points raised and determined by the judgment of the court, are particularly stated in the opinion.

*James H. Knowlton*, for the appellee.

*Orton, Atwood & Orton*, for the appellants.

*By the Court*, SMITH, J. This is an appeal from an order of the Circuit Court of Crawford county in equity, after final decree, upon the petition of the defendant Emilie Hooe for a re-hearing, granting leave to file a supplemental bill in the nature of a bill of review, &c.

The order made in this case must be reversed. This was a petition for a rehearing, and upon such a petition the circuit judge made an order granting the defendants leave to file a supplemental bill in the nature of a bill of review. Whether or not such an order could be made upon a petition for rehearing merely, this petition does not authorize it. A supplemental bill in the nature of a bill of review, can only be filed to bring in new matter, discovered since publication in the original cause, where the decree has not been enrolled. *Story's Eq. Pl.* § 425, 426. The facts newly discovered must be material and pertinent, and must be set out in the petition, so that

the court may judge of their materiality, and pertinency. But the petition in this case does not state any newly discovered evidence upon which it is based. All the causes or reasons which it presents, are for alleged errors appearing on the face of the record.

A supplemental bill in the nature of a bill of review can only be filed before enrollment of the decree, and the petition should state whether the decree has been enrolled or not. *Story's Eq. Pl.* 325, *et. seq.*

After a decree has been enrolled, it can only be modified or reversed upon a bill of review, and a supplemental bill in the nature of a bill of review, or a bill in the nature of a bill of review cannot be permitted.

All of these bills can only be filed on leave of court for that purpose granted.

For these reasons, it is apparent, that the order made in this case, is not in conformity with the practice in a court of equity, and cannot be sustained.— But as we understood the parties to desire the opinion and decision of this court upon the right of the defendant Emilie Hooe, to a rehearing in any mode, or by any proceeding, and as the case was argued with that view, we have proceeded to consider that question upon the merits, as set forth in the petition.

The petition is based upon errors apparent upon the face of the decree, and the first error assigned, is:

"It does not appear in, and by said decretal order, that the said District Court considered any particular thing proved, upon which said decree is founded, nor doth said decree set forth any fact upon which the same is based."

It is not the practice in many of the states, to set forth in the decree the matters proved on which the decree is based, nor to recite the pleadings and proof. Nor is it the practice of the courts of the United States. *Story's Eq. Pl.* 321. *Dexter vs. Arnold* 5 *Mason* 303. *Whiting vs. Bank U. S.* And this practice is now sanctioned by express rule. The pleadings and proofs are now considered matters of record, and the necessity for such recitals in the decree no longer exists, and therefore are of no practical utility.

The next objection is, "It appears on the face of the decree, that some of the defendants named in said bill, viz: Joseph Rolette, Jr., John H. Manahan, and *Jean* F. Rolette, are not parties to, or named in said decree."

The decree is very brief. None of the defendants in the suit are particularly named in it, but the decree vests the title to lot 3 in the complainant, and then proceeds to declare "the defendants" to be "forever barred &c. Taking the decree as only part of the record, of which the pleadings, and other proceedings also help to make up a part, the term "defendants" in the decree must be held to comprise all those who are made parties as such to the suit, and as the persons named in the assignment of errors are thus made parties, we think the objection untenable.

To the third error assigned, to-wit, that the prayer of the complainant for an amount of the rents, &c., is not passed upon, it is sufficient to say, that, if the complainant waives it, the defendant is not injured thereby, and it is no ground of error.

The fourth error assigned is in these words, "It is ap-

parent upon the face of the said decree, that Hercules L. Dousman is named as one of the complainants in said cause, whereas by the record of said cause it no where appears that the said Hercules L. Dousman was one of the complainants, but that he appears to be named in said decree by reason of his intermarriage with the said Jane, whereas by the law of the land the said Hercules L. could only have been made a co-plaintiff by bill, subsequent to the said bill, and subsequent to the said marriage."

It appears from the papers returned here as the record in this cause, that at the time of the commencemet thereof, the complainant Jane F. Rolette, was a *femme sole*, and, that during the pendency thereof, she intermarried with the said Hercules L. Dousman.

The suit was commenced at or before the April Term of the court, A. D. 1843. At the May term, A. D. 1854, on the 5th day thereof, there is the following entry of record:

"This day came the complainant by her solicitor, and gave the court here, to understand and be informed, that since the last term of this court she has intermarried with Hercules L. Dousman. And thereupon the said Hercules L. Dousman, the husband of the said complainant by his solicitor, moves the court to be admitted as a party to prosecute this suit with his wife, the said complainant, in like manner as if he had originally joined in the said suit, which motion is continued for argument."

And it further appears from the record, that on the next day, to-wit on the 6th day of said term of May 1845, the following entry was made: "And now comes the said defendants by their solicitors, and give

the court, here to understand, that since the last term of this court the said Jane F. Rolette, who was the sole complainant in this suit, has intermarried with one Hercules L. Dousman, and by the laws of the land regulating proceeding in chancery, the said suit was abated. The said defendants now move the court for a rule on the said plaintiff to file a bill of revivor, to revive the said suit, in the name of the said Hercules L. Dousman and Jane F. his wife as party plaintiff by the     day of     next, or in default thereof, that the said suit may be dismissed."

Argument was heard upon these motions, and the same were continued under advisement until the 9th day of the said term of May, 1845, when the following entry was made:

"This day come the parties aforesaid, by their solicitors, and it is ordered by the court, that the motion of Hercules L. Dousman, the husband of the said complainant, heretofore made herein, to be admitted as a party to prosecute this suit, be sustained; and it is ordered by the court that the said Hercules L. Dousman be admitted as a party to prosecute the said suit, with the said complainant, in like manner as if he had originally joined in the suit," &c.

It must be acknowledged, certainly, that this is a novel mode of reviving a suit in chancery. But it is probable that the party and the court construed the statute for the revival of suits at law, to extend to the practice in equity. But, however this may be, the order was made, admitting the husband as a party, and the defendants afterwards appeared, and proceeded in the suit, and made the same defence that they would have made, if the cause of abatement had not occurred. We do not say that this was a waiver

of the objection, but it was a matter of abatement merely, and as such is not ground for a bill of review, or a supplemental bill in the nature of a bill of review, or for a re-hearing. *Story's Eq. Pl.* § 44; *Milf. Pl. by Jeremy* 85; *Cooper's Eq. Pl.* 95; 6 *Bro. Parl. R.* 289.

Another error assigned is, "That said decree is variant from the case made by the bill, and is also variant from, and not in conformity to, the prayer in said bill." Without recapitulating here the case made by the bill, and the decree rendered, after a full examination thereof, we do not perceive any variance which affects the validity of the decree. The decree is not as full and comprehensive as the prayer of the bill, but the material objects are accomplished by it, and in no respect can the petitioner be injured by any omission therein.

To the 7th error assigned, it may be answered that the alleged inconsistency of the decree with itself is not apparent. The language of the decree is, " that the fee simple of and in farm lot No. 3, as the same is set forth and designated on the connected map of private land claims of Prairie du Chien, in the county of Crawford, Wisconsin Territory, containing," &c., "be and the same is hereby vested in the said complainant, Jane F. Dousman, and her heirs," &c. The succeeding portion of the decree proceeds to divest the defendants, and all other persons claiming under them (the defendants,) by virtue of the patent issued the 12th day of October, 1820, of all right, title, estate, &c., in or to the said farm lot, No. 3.

The right of the complainant is based upon several acts of Congress, the first of which necessary to be noticed is, an act entitled "An act to revive the

33

powers of the commissioners for ascertaining and deciding on claims to land in the District of Detroit, and for settling the claims to land at Green Bay and Prairie du Chien in the territory of Michigan," approved May 11, 1820. *U. S. Stat. at large, Vol.* 3, *p.* 572.

This act authorized and empowered commissioners appointed for that purpose, to examine and decide on claims to lands in the districts aforesaid, and made it their duty to transmit a report and transcript of their decisions to the Secretary of the Treasury, by him to be laid before Congress.

The commissioners appointed under this act, made their report to the Secretary of the Treasury as required by the act before mentioned, awarding said lot No. 3, to Jane F. Rolette, the wife of Joseph Rolette, and by an act of Congress approved February 21, 1823, the report was confirmed. This proceeding of Congress must be regarded as the source of title. By it all the title of the United States was conveyed to Jane F. Rolette. The plain construction of the act confirming the report of the commissioners is, that Congress intended to confirm the title to lot No. 3, in Jane F. Rolette. But the patent issued to Joseph Rolette, her husband, and this raises the question whether the act of confirmation of the report of the commissioners, by Congress, vested the title to the land, or whether the same vested by virtue of the patent subsequently issued by the President. This is a question which may be considered as settled, by the adjudications of the courts of the United States, to whose jurisdiction it may be considered as more peculiarly addressed.

In the case of *Grignon's Lessees vs. Astor et al.*, 2

*Howard U. S. Rep.* 319, this same question arose, under the same acts of Congress as those on which this title of the complainant is based. In that case the court say, " It has been contended on the part of the plaintiff's counsel, that the sale in the present case is not valid, because Peter Grignon had not such an estate in the premises as could be sold under the order of the County Court, it being only an equitable one, before the patent issued in 1820 ; but the title became a legal one by its confirmation by the act of Congress of February. 1823, which was equivalent to a patent. It was a higher evidence of title, as it was the direct grant of the fee which had been in the United States, by the government itself, whereas the patent was only the act of its officers." This same question has also been determined by the Supreme Court of Missouri, by language quite as strong as that used in the case before quoted. *Harrold and wife vs. Simonds, Baily,* 9 *Missouri R.* 323. Other cases might be cited if necessary, all of which establish the doctrine, that the legal, not the equitable title, vests by the act of confirmation or grant by Congress.

If this doctrine be true, and we believe it is sustained by the clearest principles of law and equity, the patent which was issued to Joseph Rolette, for farm lot No. 3, was hostile to the title theretofore confirmed by Congress in Jane F. Rolette, and of course must yield to the superior title in the said Jane F., vested by the act of confirmation. Hence the decree in divesting Joseph Rolette and his representatives, of all title or interest derived through the patent to him, is not inconsistent with the declaration of the title in Jane F. Rolette and her heirs.

This view of the case also disposes of the position

assumed, that the title of Jane F. Rolette, was an equitable title merely, a mere chose in action, and passed to her husband, Joseph Rolette, on her marriage with him. The proof shows that Jane entered the land, and proved her claim before the commissioners as their agent, and that the land was awarded to her, and so confirmed by Congress, which confirmation passed the legal title, beyond the future control of the government or its ministerial officers, or in other words, conveyed a title which no future patent could defeat.

Another error assigned is, "that the decree is contrary to the answers of Alexander S. Hooe and Emilie Hooe, and the exhibits, proofs or evidence at the hearing." We will not undertake to recapitulate the evidence in this case. But it will be sufficient to say, that after a careful examination of the bill, answers, exhibits and proofs, we are impelled to the conclusion that the decree is not variant from a proper and due consideration of them. On an application of this kind, the evidence is not to be reviewed. An improper application of the proofs is no ground for a bill of review, or a supplemental bill in the nature of a bill of review. *Story's Eq. Pl.* 407; 13 *Pet. Rep.* 13–14; 13 *Ves.* 178. But we have looked into the proofs carefully, and cannot avoid the conclusion that the decree was right upon the merits of the case. We have done so, because the first impression upon reading the petition would lead to the belief that the defendants had been deprived of the right of appeal, from the manner in which the decree in this case is alleged to have been placed on record. But it does appear from the decree, that the counsel or solicitor of the petitioner was present when it was announced. The

petition does not negative this fact. It states that the petitioner was not aware of it, but does not state that her counsel were not present and cognizant of its annunciation. It has been pronounced a good and valid decree by a former adjudication of the Supreme Court of this State, and upon a careful examination of all the errors alleged, as well as of the merits disclosed by the pleadings and proof, we are unable to perceive any tenable grounds on which we would be justified in opening the door to further litigation.